## JOSHUA S. SEAVERNS

*v.*

## THE PRESBYTERIAN HOSPITAL.

*Opinion filed June 18, 1898.*

1. NOTICE—*when notice to president is not chargeable to corporation.* Where the president of a corporation negotiates a loan from the corporation to a third party, which will operate to the president's individual interest and against the interest of the corporation, the latter is not chargeable with knowledge possessed by its president, which he does not communicate, of facts derogatory to the title of the property on which the loan is made.

2. MORTGAGES—*duty of mortgagee to see to application of loan.* The rule requiring a mortgagee dealing with a trustee, under some circumstances, to see to the application of the money loaned, does not apply to a case of agency where the owner of the property has executed a mortgage and placed it in the hands of his agent to negotiate the loan and receive the money, nor where, in case of a trust, the trustees must apply the money in a manner requiring deliberation, time and discretion on their part.

3. SAME—*when mortgagee is not required to see that prior mortgages are satisfied.* Where the owner of incumbered property executes a note and mortgage, and places them with his agent to negotiate and apply the proceeds of the loan to pay off the prior mortgage and other debts incurred for improvements not yet completed, the party loaning the money is not required to see that the money is so applied by the agent, and his subsequent purchase of the prior mortgage is not a payment or satisfaction thereof.

*Seaverns* v. *Presbyterian Hospital,* 64 Ill. App. 463, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This was a proceeding brought by the Presbyterian Hospital of the city of Chicago, the defendant in error, to foreclose two mortgages,—one given by Mark S. Thompson to secure a note for $10,000, dated March 11, 1882, payable five years after date to the order of himself, and bearing interest at seven per cent per annum, on the west

14.24 feet of lot 7 and all of lots 8 and 9, in W. H. Adams' subdivision of part of the south-east quarter of section 28, township 39, range 14, in the city of Chicago; and the other, a mortgage given by Joshua S. Seaverns, the plaintiff in error, who became the owner of the said premises October 2, 1885, and made his promissory note of that date for the sum of $2000, to the order of himself, and bearing interest at seven per cent per annum, and which matured the same day as the $10,000 note, and was endorsed to Peabody, Houghteling & Co., who were also the owners of the $10,000 note. The $2000 mortgage was subject to the Thompson mortgage, and both were duly recorded. The Presbyterian Hospital purchased these two notes, amounting to $12,000, July 21, 1894, of Peabody, Houghteling & Co., and filed this bill of foreclosure on January 25, 1895.

After the purchase of the property by Seaverns, he gave the control and management of the same to Bogue & Hoyt, real estate agents in Chicago. They became his agents in 1885, and continued such agents until March, 1894, when they failed in business. The firm of Bogue & Hoyt was composed of George M. Bogue, Hamilton B. Bogue and one Hoyt, and after the death of Hoyt was known as Bogue & Co. Hamilton B. Bogue, of the firm, did the whole business for Seaverns, collected the rents, paid his interest and took general charge of this property for him. In 1890 Seaverns arranged with his agents, Bogue & Hoyt, to remodel the warehouse on the property, and they took entire charge of the improvements. The repairs were estimated to cost, when they were commenced, between $6000 and $7000, but when completed the cost was about $19,000. During the progress of the work Bogue & Hoyt advanced large sums of money for Seaverns, until it became necessary for him to raise more money to carry on the repairs. Hamilton B. Bogue proposed to Seaverns that he should be permitted to negotiate a loan for him on the property for $25,000, and that

with the proceeds the two mortgages now being fore-
closed could be paid off and the balance applied to pay
for the improvements.   This Seaverns approved and con-
sented to with Hamilton B. Bogue, and March 31, 1891,
Seaverns executed a promissory note for $25,000, payable
to his own order and endorsed by himself, payable five
years after date, the interest being represented by cou-
pon notes and secured by mortgage on the aforesaid
property.    At this time George M. Bogue was president
and chairman of the executive committee of the hospital,
and George W. Hale was treasurer and also a member
of the finance committee.   After Hamilton B. Bogue had
arranged with Seaverns for making this new mortgage,
Bogue & Hoyt wrote the following letter to Hale, the
treasurer of defendant in error:

"CHICAGO, *March 31, 1891.*
"*George W. Hale, Esq., Treasurer, etc.:*

"DEAR SIR—We have negotiated a loan to A. B. and J. S.
Seaverns for $25,000 on their property at the corner of Twenty-
sixth and Butterfield streets, the details of which will be given
when we hand the papers covering the loan.   Please send us
your check for the amount of the loan, $25,000.

"Very truly yours,      BOGUE & HOYT."

This request to the treasurer to send his check for
$25,000, and the note for $25,000, both bear date March
31, 1891.    The treasurer's check was dated April 1, the
following day, but the mortgage was not acknowledged
until April 6, when it was sent to defendant in error and
the transaction was completed.

Plaintiff in error, Seaverns, filed his answer to the bill
for foreclosure, denying there was due defendant in error
$12,000 and interest on said notes secured by said mort-
gages being foreclosed, and claiming that said Presby-
terian Hospital had notice of said mortgages, and of the
understanding between said Bogue & Co. and said Sea-
verns that said Bogue & Co. should pay off, out of the
proceeds of said $25,000, the two mortgages, amounting

to $12,000, and that it was the duty of the hospital to see to the application of the money towards the payment of the two mortgages sought to be foreclosed, and that the purchase by the hospital of the two mortgages should be treated as a payment and cancellation thereof, and should be declared satisfied. A replication was filed, and on the hearing the court decreed a foreclosure of the two mortgages, as being first liens on the property. The case was taken to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and Seaverns brings the case to this court by writ of error, and asks that the decree of the circuit court and the order of affirmance of the Appellate Court may be reversed.

PENCE & CARPENTER, for plaintiff in error:

Any knowledge or information possessed by an agent at the time of acting as agent for a corporation, with respect to the matter upon which he is to act, is notice to the corporation; and notice to an executive officer or managing agent is notice to the corporation itself, if it relates to matters within the scope or duties of such agent. 1 Morawetz on Corporations, sec. 540; *Holden* v. *Bank*, 72 N. Y. 286; Mechem on Agency, secs. 718-721; *Bank* v. *Irons*, 8 Fed. Rep. 1; *Hart* v. *Bank*, 33 Vt. 252; *Bank* v. *Campbell*, 4 Humph. 394; *Bank* v. *Canal Co.* 4 Paige, 127; *Hills Manf. Co.* v. *Camp*, 49 Wis. 130; *Houseman* v. *Girard Building Co.* 31 Pa. St. 256; *Mayor* v. *Bank*, 111 N.Y. 457; *Bank* v. *Whitehead*, 36 Am. Dec. 186; *The Distilled Spirits*, 11 Wall. 367; *Dresser* v. *Norwood*, 17 C. B. 466.

Subsequent ratification or acquiescence has the same effect as prior authority. *Railroad Co.* v. *Kelly*, 77 Ill. 426; *Alcott* v. *Railroad Co.* 27 N. Y. 558; *Bank* v. *Dandridge*, 20 Wheat. 64.

The rule is, that the knowledge or notice possessed by an ordinary agent who deals adversely with the corporation and in his own interest is not binding; but the exception is, that a president or chairman of a finance

committee, or other executive officer of a corporation having the power and management of the concerns of a corporation, though he acts in his interest and in fraud of the rights of the corporation, will bind the same where he possesses the knowledge or has notice upon any given subject. *Bank* v. *Davis*, 2 Hill, 454; *Bank* v. *Campbell*, 4 Humph. 394; *Holden* v. *Bank*, 72 N. Y. 286; *Mayor* v. *Bank*, 111 id. 446; *Bank* v. *Schaumberg*, 38 Mo. 228; *In re Carew's Estate*, 31 Beav. 39; *Bank* v. *Cushman*, 121 Mass. 490; *Powles* v. *Page*, 17 C. B. 16; *Bank* v. *Aymar*, 3 Hill, 262; Morawetz on Corporations, sec. 540.

The duty of a corporation having knowledge of the way in which the proceeds of sale of a security were to be applied upon specific debts requires it to see to the application of the purchase money. 2 Perry on Trusts, secs. 597, 598, 790, 796; 1 Lewin on Trusts, 453, 457, 462; *Forbes* v. *Peacock*, 12 Sim. 590; *Duffy* v. *Calvert*, 6 Gill, 487; *Skeel* v. *Stocker*, 11 Ill. App. 143; Mechem on Agency, secs. 780, 785, 786; *Blair* v. *Sennott*, 134 Ill. 87.

GREEN, ROBBINS & HONORE, for defendant in error:

Where the trusts are defined yet the money is not merely to be paid over to third persons but is to be applied by the trustees to certain purposes which require on their part time, deliberation and discretion, the purchaser is not bound to see to the due application of the purchase money, as where, for any reason, it would be unreasonable and burdensome to require the purchaser to look after the matter, and would really amount to constituting him a trustee, he will be free from the control of the general rule. Story's Eq. Jur. sec. 1134; Perry on Trusts, secs. 790, 794; *Wormley* v. *Wormley*, 8 Wheat. 423.

If the trust is to pay debts generally, the purchaser cannot be subject to the rule that he shall see to the application of the purchase money; or if the trust is to pay debts and legacies, or to pay a particular debt and all other debts, or to pay legacies, or to pay debts and ap-

ply the balance to the support of some one, there can be no obligation to see to the payment of the debts and legacies. If one débt is named but is coupled with others not named, the same considerations apply. In such trusts the testator must be presumed to have intended that his trustees should have the full power to give receipts for the purchase money, in order to apply it to the purposes pointed out. Perry on Trusts, sec. 795.

Mr. JUSTICE CRAIG delivered the opinion of the court:

*First*—Did the defendant in error have actual or constructive notice of the arrangement between Seaverns, the plaintiff in error, and Bogue & Co., that Bogue & Co. should pay off the first mortgages sought to be foreclosed, out of the $25,000, by reason of George M. Bogue being president of the hospital? The testimony shows that all the arrangements for the making of the $25,000 loan were between Hamilton B. Bogue and Seaverns. The talk when it is claimed the arrangement was made for paying off these first mortgages out of the $25,000 loan, was between Seaverns and Hamilton B. Bogue. George M. Bogue was not present, and there is no evidence showing he had any knowledge that the money was to be applied to take up the first mortgages, until after the payment of the money and the delivery of the mortgage to the defendant in error. Because George M. Bogue was a partner of Hamilton B. Bogue and was the president of the Presbyterian Hospital, therefore plaintiff in error claims defendant in error had constructive notice. Plaintiff in error also claims that any knowledge or information possessed by an agent at the time of acting as agent for a corporation is notice to the corporation, and notice to an executive officer or agent is notice to the corporation itself.

The general proposition is true; but where an officer of a corporation is dealing with the corporation in his own interest, opposed to its interest, he is held not to

represent it in the transaction so as to charge it with the knowledge he may possess, but which he has not communicated to it and which it does not otherwise possess, of facts derogatory to the title he conveys. (*Commercial Bank* v. *Cunningham*, 24 Pick. 270; Angell & Ames on Corporations, 308.) In *Higgins* v. *Lansingh*, 154 Ill. 301, a corporation making a purchase from its president was held not chargeable with his knowledge of infirmities in his title to the property. In denying notice to the corporation this court said (p. 387): "This is upon the view that Higgins, who was at the time the president of the insurance company, was not, in the transfer of the securities to it, its agent; that while, ordinarily, notice to the president of a corporation is also notice to the corporation, such is not the law when the president is dealing with it in his own interest and against the interest of the corporation; that notice to the corporation through its officer rests upon the presumption that the officer will communicate such notice, but that it cannot be presumed that Higgins, although president of the insurance company, would, in selling these securities to it, make any communication derogatory to them, his title thereto, or their value. We think the rule contended for is supported by sound reason and the authorities as well. In *Barnes* v. *Trenton Gas Co.* 27 N. J. Eq. 33, it was said: 'The general proposition is undoubtedly true, that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from or is at the time connected with the subject matter of his agency. The rule is based on the presumption that the agent has communicated such facts to the principal. (Story on Agency, sec. 140.) On principles of public policy the knowledge to the agent is imputed to the principal. But the rule does not apply to a transaction such as that under consideration, [the president selling to the company,] for in such a transaction the officer, in making the sale and conveyance, stands as a stranger to the company. (*Strat-*

*ton* v. *Allen*, 1 C. E. Green, 229.)   His interest is opposed
to theirs, and the presumption is, not that he will com-
municate his knowledge of any secret infirmity of the title
to the corporation, but that he will conceal it.'"   In the
case at bar, Bogue & Co. were dealing with the hospital
in their own interest.   They were negotiating a loan
which subsequent events showed they intended to apply
to Seaverns' indebtedness to themselves, for advances
made by them.   The fact that the $25,000 mortgage was
not a first lien, as required by the by-laws of the hos-
pital, shows that neither George M. Bogue nor Bogue &
Co. were looking out for the interests of plaintiff in error,
and did not communicate the fact to defendant in error,
as that would have prevented the loan from the hos-
pital to Seaverns.   Here the president was negotiating
the note and mortgage to the defendant in error, and he
stands, under the authorities, as a stranger to the hos-
pital, and must be held not to represent it in the transac-
tion so as to charge it with the knowledge which he may
have possessed but did not communicate to it, and which
it did not know.

*Second*—Was there any legal obligation on the part of
defendant in error, when it paid the $25,000 to Bogue &
Co. and received in exchange the $25,000 note and mort-
gage, to see to the application of the money in payment
of the $12,000 first mortgages now sought to be fore-
closed?   Plaintiff in error concedes the validity of the
two mortgages in controversy in the hands of the origi-
nal mortgagees, or any one except the defendant in error.
It appears from the evidence that Bogue & Hoyt had
been the agents of plaintiff in error for many years; had
taken full charge of the property since plaintiff in error
purchased it; had paid taxes, collected rents, and had
charge of remodeling the warehouse thereon.   In mak-
ing the repairs they had advanced large sums of money
for plaintiff in error.   In order to complete the repairs
it became necessary for plaintiff in error to negotiate a

loan on the property. Plaintiff in error arranged with Hamilton B. Bogue, of the firm of Bogue & Co., to negotiate a loan and to receive the money. Plaintiff in error claims it was agreed between himself and Hamilton B. Bogue that these two mortgages should be first paid off, the balance to be used in finishing the building. Seaverns executed a note for $25,000, payable to himself, and endorsed it, the same being secured by a mortgage on the property, and placed it in the hands of his agents, Bogue & Co., to negotiate. Bogue & Co. sold the note and mortgage to the Presbyterian Hospital, and received the $25,000 from its treasurer. The note was sent to the treasurer, and the mortgage also, as soon as recorded. The transaction was completed April 6, 1891. Defendant in error did not own the two mortgages now being foreclosed, at that time.

Plaintiff in error attempts to apply the principle in this case, that a purchaser or mortgagee dealing with a trustee must, under some circumstances, see to the application of the purchase money. The case at bar is not a case of trust, but one of agency, the owner of property executing a mortgage and giving it to his agents to negotiate the loan and receive the money. The rule in regard to the application of purchase money is applied where the title to property sold or mortgaged is in the trustee and such trustee is the legal owner, while in equity the real owners are the *cestuis que trustent*, and when one receives a conveyance of this beneficial title it is his duty to get from the real owner a receipt for the purchase money. Perry on Trusts (sec. 790) says: "Thus, if an estate is vested in trustees to sell, and divide the purchase money between B and C, a court of law treats the trustees as the true owners and their receipts for the purchase money as valid discharges; but courts of equity treat B and C, the *cestuis que trust*, as the true owners and the trustees as mere instruments. Courts of equity, therefore, require that the receipts for the pur-

chase money shall be signed by the rightful owners, or the purchase money must be properly applied to their use according to the terms of the trust, or there can be no such conveyance of the estate as to bar their beneficial interests.   *   *   *   Thus, the application of the purchase money, or the power of trustees to sign receipts for it, becomes, in equity, a question of title, or, rather, a question of the equitable title, which is the principal thing, for the legal title without the beneficial use is of little consequence.   Thus, the general rule is, that *prima facie* the *cestuis que trust* must sign receipts for the purchase money, or the purchaser must look to its application." And again, in section 798: "It may be stated that the strict English rule is not favored in American courts, although they apply the doctrine where it cannot be avoided."

In *Duffy* v. *Calvert*, 6 Gill, 517, the court states the reason of the rule: "In equity the party beneficially entitled to the produce of the estate,—that is to say, the *cestui que trust* of the purchase money,—and not the trustee or donee of the power of sale, is considered to be the owner; and on this principle it is that the purchaser is bound, at the hazard of having his money to pay over again; to pay to the *cestui que trust* or see that it comes to his hands, or, in other words, to see to its application."

In Story's Equity Jurisprudence (sec. 1124) Sir William Grant is quoted as making it "questionable whether the admission of the doctrine is not, in general, productive of more inconvenience than real good, for although in many instances it is of great service to the *cestui que trust*, as it preserves his property from peculation and other disasters to which, if it were left to the mere discretion of the trustee, it would necessarily be subject, yet, on the other hand, it creates great embarrassments to purchasers in many cases, and especially where, as in cases of infancy, the parties in interest are incapable of giving a valid assent to the receipt and application of the purchase money

by the trustee." And Mr. Story, after discussing the rule, says (sec. 1135): "These are some of the most important and nice distinctions which have been adopted by courts of equity upon this intricate topic, and they lead strongly to the conclusion, to which not only eminent jurists but also eminent judges have arrived, that it would have been far better to have held in all cases that the party having the right to sell had also the right to receive the purchase money, without any further responsibility on the part of the purchaser as to its application."

The tendency has been to restrict rather than to enlarge the application of the rule. In *Whitman* v. *Fisher*, 74 Ill. 147, where power was given by will to executors to sell real estate to raise funds with which to pay legacies as the legatees became of age, it was held that a sale and conveyance made after one of them arrives at majority will be valid, even though the proceeds are applied in payment of the testator's debts. In regard to the purchaser not being required to see to the proper application of the purchase money the court said (p. 158): "The testator made certain bequests to each of his children, payable, respectively, as they became of age. Power is expressly given to the executors to sell real estate for the purpose of raising funds with which to pay these several legacies. Ogden H. Whitman, one of the beneficiaries under the will, became of age in 1852 and was entitled to the bequest in his favor. The sale to John Fisher was made in the spring of 1854. It does not appear but the exact case had arisen where the executors had the clear right, under the will, to sell real estate independently of the decree of the court. *The purchaser was under no obligation to see to the application of the purchase money.*"

*Third*—The facts in this case preclude the operation of the rule contended for by plaintiff in error, under the law, even if it had been a trust on the part of defendant in error. Story in his Equity Jurisprudence (sec. 1134) says: "Where the trusts are defined yet the money is

not merely to be paid over to third persons but is to be applied by the trustees to certain purposes which require on their part time, deliberation and discretion, the purchaser is not bound to see to the due application of the purchase money." Perry on Trusts (sec. 795) gives the following trusts where the purchaser is not subject to the rule: "If the trust is to pay debts generally, the purchaser cannot be subject to the rule that he shall see to the application of the purchase money; or if the trust is to pay debts and legacies, or to pay a particular debt and all other debts, or to pay legacies, or to pay debts and apply the balance to the support of some one, there can be no obligation to see to the payment of the debts and legacies. * * * If one debt is named but is coupled with others not named, the same considerations apply. In such trusts the testator must be presumed to have intended that his trustees should have the full power to give receipts for the purchase money, in order to apply it to the purposes pointed out." In 2 Lewin on Trusts (p. 456) it is said: "To the principle under consideration is referable the well-known rule that a purchaser is not bound to see to the application of his money where the trust is for payment of debts generally, for to ascertain who are the creditors and what is the amount of their respective claims is matter of trust involving long and intricate accounts, and requiring the production of vouchers which the purchaser would have no right to require, and mere absence of statement of the purpose for which the money is wanted will not make a purchaser or mortgagee liable on the ground of presumed knowledge that the money was to be applied otherwise than for the payment of debts. So if the trust be for payment of a *particular* debt named and the testator's other debts," citing *Corser* v. *Cartwright*, 7 L. R. H. L. 731; *Robinson* v. *Lowater*, 17 Beav. 592. This rule was approved by this court in *Cherry* v. *Greene*, 115 Ill. 591, as follows (p. 597): "We are of opinion, therefore, that Crapo and Clifford, the trus-

tees named in the above recited instrument, are vested with power to sell the premises in question, *nor will a purchaser from them be under obligation to see to the application of the purchase money.* Where, as here, the trust is to pay debts generally, and apply the balance to the support of the grantor's family, the purchaser is released from such obligation.—Perry on Trusts, sec. 795; Hill on Trustees, p. 342." See, also, *Franklin Savings Bank* v. *Taylor*, 131 Ill. 376.

When the $25,000 mortgage was agreed upon in March, 1891, the improvements on the building had not been completed, and the evidence shows they were not completed until in September, 1891. One Schuyler, a witness for plaintiff in error, testified that Hamilton B. Bogue came into his office and he sent for plaintiff in error, Seaverns, and he (Schuyler) then said to Bogue: "This mortgage—this $25,000 mortgage—if it is given, it is upon the understanding that you pay the first mortgage and that the balance be applied to what is owing you, and to the further betterment and improvement of the property. * * * What was left after the payment of the $12,000 was to be applied by them upon the indebtedness of Seaverns." Seaverns testified: "The deed was given for the purpose of paying the Peabody loan, and the balance was to pay on the improvements to finish up the building." When he was asked as to the amount it would all be,—whether the $25,000 would be sufficient to take care of the whole thing,—he did not think anything was said because the building was not done; that there was some talk about how much it was going to take, and he said the $25,000 was supposed to be enough to take care of them. The accounts, as appears from the record, show many items paid by his agents, Bogue & Co., after March 31, 1891,—after the execution of the mortgage. This evidence clearly shows that part of the $25,000 received from the hospital was to be applied to pay a particular debt, and to pay debts not ascertained, when the mortgage

loan was made, and also on debts to arise in the future in finishing the building. The finishing and remodeling of the building were under the entire control of Bogue & Co., and they were given a discretion in the matter.

The testimony is conclusive that the hospital is not, under the authorities, subject to the rule which required it to see to the application of the purchase money. The defendant in error not being legally bound to see to the payment of the mortgages sought to be foreclosed, had a right to purchase them, and such purchase was not a satisfaction of them.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*