Mutual Investment Company, Appellant, v. T. T. Wildman and Miriam P. Wildman, Appellees.

Gen. No. 18,281.

1. BILLS AND NOTES, § 240*—*when bona fide purchaser protected.* An indorsee or assignee of commercial paper who takes before maturity for a valuable consideration without knowledge of any defects and in good faith will be protected against the defenses of the maker, and mere suspicion of defect of title, or the knowledge of circumstances calculated to excite suspicion in the mind of a prudent man, or even gross negligence on his part at the time of transfer, will not defeat his title.

2. BILLS AND NOTES, § 244*—*when corporation takes with notice of maker's defenses.* A corporation becoming a purchaser for value before maturity takes with constructive notice of want of consideration where its officer representing the corporation in the transaction had notice thereof.

3. CORPORATIONS, § 387*—*when knowledge of officer is constructive notice to corporation.* Knowledge of an officer of a corporation concerning a transaction is imputable to the corporation where such officer acts in its behalf.

4. CORPORATIONS, § 387*—*when knowledge by officer is not notice to corporation.* An officer of a corporation who is dealing with the corporation in his own interest and opposed to the interest of the corporation does not represent the corporation so as to charge it with knowledge he possesses.

5. CORPORATIONS, § 387*—*when question of law whether knowledge of officer is imputed to corporation.* Where it is admitted

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

that an officer of a corporation has notice of certain facts, the question whether his knowledge is constructive notice to the corporation is a question of law.

Appeal from the Municipal Court of Chicago, the Hon. JOHN D. TURNBAUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 9, 1913. Rehearing denied October 23, 1913.

**Statement by the Court.** This is an appeal from a judgment of the Municipal Court of Chicago in a first class suit. At the conclusion of all the evidence the court directed the jury to return a verdict finding the issues against the plaintiff, Mutual Investment Company, which they did, and judgment was entered in favor of the defendants for costs.

Plaintiff, a Wisconsin corporation, with principal office at Milwaukee, Wisconsin, sued to recover, as indorsee, the principal sum of a promissory note, together with interest. The note was dated Milwaukee, September 11, 1909, and by its terms T. T. Wildman and Miriam P. Wildman promised to pay to the order of Federal Rubber Company, on June 1, 1910, the sum of one thousand dollars, with interest at six per cent. per annum. The note bore the indorsement "Pay to order of Mutual Invt. Co., Federal Rubber Co., by J. H. Frank, Pres." The Federal Rubber Company, hereinafter called the Federal Co., was also a Wisconsin corporation and also had its principal office at Milwaukee, Wisconsin. The defense interposed was that the defendants were induced to sign the note by reason of the false representations of J. H. Frank, president of the Federal Co.; that T. T. Wildman was then indebted to the Federal Co., which was not the fact, although it was supposed to be by the defendants at the time; and that the note was transferred to the plaintiff with the fraudulent purpose of preventing the defendants from making any defense; and that plaintiff was not a *bona fide* holder of said note without notice.

On the trial, after the plaintiff had introduced the

note and rested, the defendants introduced a check for one thousand dollars, dated at Milwaukee, September 14, 1909 (three days after the date of said note), drawn on the Germania National Bank of Milwaukee, payable to the order of the "Federal Rubber Co.," signed "Mutual Investment Company, by Emil H. Koepke, Sec'y." and countersigned by "J. H. Frank, V. Pres. & Treas." On the back of the check was the indorsement "Pay to Germania National Bank of Milwaukee or order, for deposit, to the credit of Federal Rubber Co." It was stipulated by the respective parties that "J. H. Frank, who countersigned this check, as vicepresident and treasurer of the plaintiff company, was at the same time the president of the Federal Co., and as such president endorsed the note to the plaintiff company." The following facts were also stipulated and agreed to:

"It is stipulated and agreed that at the time the Federal Co. was organized it entered into a contract, through its president John H. Frank, with the defendant T. T. Wildman, whereby the said T. T. Wildman should have the exclusive agency for the sale of the goods of said Federal Co. in the City of Chicago and should receive commissions on all sales of the Federal Company's goods in the City of Chicago whether said sales were solicited by said defendant or not; that in addition to selling goods on commission, the defendant T. T. Wildman was allowed to purchase goods at the regular price less his commission and resell the same at whatever price he could obtain and was allowed a credit with said Federal Co. for this purpose; that on September 11th, 1909, while defendant T. T. Wildman was in the office of the Federal Co. in Milwaukee, Wisconsin, the president of said Company, Mr. John H. Frank, advised said Wildman that at that time he (Wildman) was indebted on his account to the Federal Co. between two and three thousand dollars and asked said Wildman to sign a note for $1,000 on account thereof; that at that time said Wildman supposed said statement was true and agreed with said Frank that he would sign a note for $1,000 provided

it was made for a long enough period so that the commissions coming to him from time to time would be sufficient to pay the same; that said Frank had said note made out and dated September 11th, 1909, payable June 1st, 1910 and told said Wildman that if he would sign the same and have his wife Miriam Parker Wildman, the other defendant in this suit, sign said note that the said Federal Co. would apply all commissions coming to said T. T. Wildman as they accrued upon the payment of said note; that said Wildman told said Frank that if the Federal Co. would do that he was willing to sign said note and have his wife sign it also and the note was signed with that agreement; that before and at the time said note became due said T. T. Wildman had earned enough commissions from said Federal Co. to more than pay said note and interest and all indebtedness from said Wildman to said Federal Co., and that at the time of the signing of said note the said Federal Co. was withholding commissions due said Wildman without his knowledge and that at that time said Wildman was not as a matter of fact indebted to said Federal Co."

At the conclusion of the defendants' evidence, the plaintiff moved that the court instruct the jury to find the issues for the plaintiff, which motion was denied. Plaintiff thereupon called Emil H. Koepke as a witness in rebuttal. He testified that on September 14, 1909, he was the secretary of plaintiff; that on that day J. H. Frank telephoned him to come over to the offices of the Federal Co., which he did; that Frank said he had a note for one thousand dollars, which he wanted discounted and which had been given by one of the customers of the Federal Co., and which was a good note but was not discountable at the bank; that he (Koepke) then returned to the office of plaintiff and made out the check for one thousand dollars and signed it as secretary; that all checks of plaintiff under the sum of two hundred dollars were signed by the witness as secretary, but that all checks over that sum were required to be countersigned by either the president or vice-

president of plaintiff; that he tried to reach the president of plaintiff for the purpose of having him countersign the check, but the president was not then in his office; that subsequently J. H. Frank countersigned the check, and Koepke turned over the check and received the note in return, indorsed as aforesaid. On cross-examination Koepke testified that at the time of the transfer of the note the president of plaintiff was Louis F. Frank, a brother of J. H. Frank; that the three directors of plaintiff were the two brothers and Bertha M. Frank, widow of a deceased brother; that J. H. Frank had been the vice-president and treasurer of plaintiff ever since the organization of the company in 1905; that the Federal Co. was organized in 1908 with a capital of $620,000; that there were sixteen or eighteen directors of that company, and that J. H. Frank was no longer an officer of the Federal Co.

ALDEN, LATHAM & YOUNG, for appellant; CHARLES MARTIN, of counsel.

HARPER E. OSBORN, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It appears from the evidence in this case that the one thousand dollar note in question was signed by the defendants because they at that time believed that the representations of J. H. Frank, president of the Federal Co., that T. T. Wildman was then indebted to that company, were true, although as a matter of fact he was not then so indebted, and because of the agreement that the commissions to be earned by said Wildman should be applied in payment of said note, evidencing said supposed indebtedness. Three days after the execution of the note and before its maturity, J. H. Frank, as president of the Federal Co., in violation of said agreement, indorsed said note over to plaintiff and plaintiff delivered to the Federal Co. its check for one

thousand dollars, payable to the order of the Federal Co., which check that company subsequently cashed. The check was signed by Emil H. Koepke, the secretary of plaintiff, and was countersigned by said J. H. Frank, the vice-president and treasurer of plaintiff. It appears that all checks of plaintiff under the sum of two hundred dollars were signed by said Koepke, as secretary, but that all checks over that sum were required to be countersigned by either the president of plaintiff or by J. H. Frank; that after Koepke had made out the check and had signed it as secretary he endeavored to get the president to countersign the check, but that the latter was not in his office; and that said J. H. Frank subsequently countersigned the check, as vice-president and treasurer of plaintiff, and the note, indorsed as aforesaid, was delivered to plaintiff. It thus appears that while J. H. Frank was representing the Federal Co. he was an essential representative of plaintiff in the transaction. In the absence of the president of plaintiff, the countersignature of J. H. Frank was necessary to then transfer the one thousand dollars named in the check to the Federal Co.

"The rule now is, that the endorsee or assignee of commercial paper who takes the same before maturity for a valuable consideration, without knowledge of any defects and in good faith, will be protected against the defenses of the maker, and mere suspicion of defect of title or the knowledge of circumstances calculated to excite suspicion in the mind of a prudent man, or even gross negligence on his part at the time of the transfer, will not defeat his title." *Bradwell v. Pryor,* 221 Ill. 602.

Counsel for plaintiff contend that the trial court erred in directing the jury, at the conclusion of all the evidence, to return a verdict in favor of the defendants, and argue that the plaintiff took the note before maturity for a valuable consideration, without knowledge of any defects and in good faith, and for the reason that

the knowledge of J. H. Frank of the defect in the paper and of the fraud practiced upon the defendants is not imputable to the plaintiff.    Counsel have cited, among others, the cases of *Higgins v. Lansingh,* 154 Ill. 301, and *Seaverns v. Presbyterian Hospital,* 173 Ill. 414, as supporting their position.   In the *Higgins* case, *supra,* it was decided that a corporation making a purchase from its president of certain securities is not chargeable with his knowledge of the infirmities in his title thereto.   In the *Seaverns* case, *supra,* it was decided that where the president of a corporation negotiates a loan from the corporation to a third party, which will operate to the president's individual interest and against the interest of the corporation, the president stands as a stranger to the corporation, and must be held not to represent it in the transaction so as to charge it with the knowledge which he possessed but did not communicate to it, and which it did not know. In the *Higgins* case, *supra,* at page 387, our Supreme Court quotes with approval from the case of *Barnes v. Trenton Gas Co.,* 27 N. J. Eq. 33, in which quotation there is, first, a statement of the general rule, viz: "that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject matter of his agency," and, second, a statement of an exception to the general rule, viz: that where the agent is an officer of a corporation, and is dealing with the corporation in his own interest and opposed to the interest of the corporation, he is held not to represent the corporation in the transaction, so as to charge it with the knowledge he possesses, which he does not communicate to the corporation and which the corporation does not otherwise possess.    In the *Higgins* and *Seaverns* cases, *supra,* the foregoing exception to the general rule was considered as being properly applicable to the facts in those cases, but we do not think that said exception should, under all the facts in evidence, be applied to

the present case. There are several well considered cases which recognize a qualification to said exception to the general rule, viz: where the officer of the corporation (though he also acts in his own interest or the interest of another corporation) is the sole or an essential representative of the corporation in the transaction in question, in which event his knowledge is held to be imputable to the corporation. See *Brobston v. Penniman*, 97 Ga. 527; *Morris v. Georgia Loan Co.*, 109 Ga. 12; *Black Hills Nat. Bank v. Kellogg*, 4 S. D. 312; *Steam Stonecutter Co. v. Myers*, 64 Mo. App. 527; *Traders Nat. Bank of Ft. Worth v. Smith*, (Tex. Civ. App.) 22 S. W. Rep. 1056; *Niblack v. Cosler*, 74 Fed. Rep. 1000. In 2 Pomeroy's Eq. Jur. (3d. Ed.) sec. 675, note 1, the author expresses a doubt whether said exception to the general rule can apply to "presidents, and other such managing officers of a corporation, through whom alone the corporation *can* act." In an exhaustive note, following the report of the case of *Waynesville Nat. Bank v. Irons*, 8 Fed. Rep. 1, at page 11, it is stated that "in order to charge the corporation with notice of facts of which a director or other officer had knowledge, he must have acted in the transaction on behalf of the corporation." Several cases are there cited in support of the statement, in which cases the officer of the corporation acted in its behalf in the transaction and his knowledge was held to be imputable to the corporation. See *Bank of U. S. v. Davis*, 2 Hill (N. Y.) 451; *First Nat. Bank of New Milford v. Town of New Milford*, 36 Conn. 93; *Clerks' Sav. Bank v. Thomas*, 2 Mo. App. 367; *National Security Bank v. Cushman*, 121 Mass. 490. Under the stipulated and other facts in evidence in this case, we have reached the conclusion that the knowledge of J. H. Frank was imputable to the plaintiff.

It is also urged that the question whether the plaintiff had notice, etc., was a question of fact which should have been submitted to the jury. Under the stipulated

facts, J. H. Frank admittedly had knowledge of the defects in the paper and of the fraud, and the question was whether that knowledge was constructive notice to the plaintiff. We think this was a question of law on the admitted facts (10 Cyc. 1061), and we are of the opinion that the trial court in this case did not err in directing a verdict in favor of the defendants.

And we do not think that the court committed prejudicial error in its rulings as to the admissibility of certain testimony offered by plaintiff.

The judgment of the Municipal Court is therefore affirmed.

*Affirmed.*