Sherman State Bank v. Smith, 244 Ill. App. 171.

# Sherman State Bank, Appellant, v. John T. Smith et al., Appellees.

## Gen. No. 31,294.

1. NEGOTIABLE INSTRUMENTS—*when innocent holder for value protected although his transferee acquired possession by larceny.* Unless a note was given in a gaming proposition or execution was fraudulently obtained, an innocent holder thereof for value by indorsement in blank before maturity is protected under Cahill's St. ch. 98, ¶ 77, even though the one from whom he received it had stolen it from the true owner.

2. NEGOTIABLE INSTRUMENTS—*when corporation acquiring title to instrument from its president not deemed innocent purchaser.* The general rule that a corporation buying securities from its president is not chargeable with his knowledge of infirmities therein does not apply to a case where the president, as the main or only purchasing agent of a bank, practically bought from himself a note which he had taken from the true owner under misrepresentations.

3. NEGOTIABLE INSTRUMENTS—*when bank acquiring title to instrument from its president chargeable with notice of fraudulent conduct of transferee in acquiring possession thereof.* A bank, which every six months on order of the president cashed interest coupons on a note, and of which the president was trustee of the trust deed securing the note and financial adviser of the true owner, is charged with notice of these facts and is not a holder in due course of said note and cannot collect it, after purchase from its president who fraudulently got it from the true owner.

4. NEGOTIABLE INSTRUMENTS—*when innocent holder of instrument not protected against loss by fraud of its transferee made possible by its own acts.* A bank, even though innocent holder of a note purchased from its president who had fraudulently obtained it from the true owner, but which had made it possible for such fraud to occur, rather than the true owner should bear the loss occasioned by such fraud.

THOMSON, J., dissenting.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. MICHAEL L. McKINLEY, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Affirmed. Opinion filed April 6, 1927.

JAMES PERCIVAL PIO, for appellant.

HAYDEN N. BELL, for Margaret J. K. Lane, appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Sherman State Bank filed its bill to foreclose an incumbrance of $3,500 secured by a trust deed on a certain piece of real estate, Margaret J. K. Lane intervened in the cause and filed a cross-bill claiming that she was the owner of the note and trust deed. The owner of the equity in the real estate admitted the debt was due and unpaid so that the contest was between the Sherman State Bank and Mrs. Lane. The chancellor found that Mrs. Lane was the owner of the note and trust deed and a decree was entered accordingly, from which the Sherman State Bank prosecutes this appeal.

The record discloses that on July 7, 1920, Margaret J. K. Lane owned a piece of real estate in Chicago and on that date sold it to John T. Smith and Annie E. Smith, his wife, and to secure the payment of the part of the purchase money the Smiths made their promissory note of that date in the sum of $3,500 with interest at 7 per cent per annum payable semiannually. The note was payable to their order and by them indorsed and delivered. Interest coupons maturing every six months evidencing the interest to become due on the mortgage were likewise executed and delivered. The note by its terms was due five years after date, and to secure the payment of it the Smiths executed a trust deed to Bruno F. Kowalewski, trustee. The trust deed was delivered and recorded. Some time prior to the making of the note and trust deed, Kowalewski, the trustee, was "to a certain extent the financial adviser" of Mrs. Lane and caused himself to be named as trustee in the trust deed. For a long time prior to July, 1920, the trustee, Bruno F. Kowalewski, and his brother, Roman J. Kowalewski, were copartners, apparently in the real estate business and maintained safety deposit vaults at Fifty-first and Throop Streets, Chicago. This business they operated under the name

of the Sherman Park Safety Deposit Company and Mrs. Lane rented one of the safety deposit boxes in which she kept her valuable papers, including the mortgage in question. Every six months when the interest on the mortgage came due Mrs. Lane would go to her box, get an interest coupon, present it to Bruno F. Kowalewski, who would call the cashier of the bank (The Sherman State Bank having been incorporated and Bruno F. Kowalewski being then its president and a director and stockholder in the bank) and instruct him to pay Mrs. Lane the interest, and she would surrender the coupon to him and he would collect it from the person who owed the indebtedness. It further appears that on April 24, 1924, Bruno F. Kowalewski advanced to Mrs. Lane $200, $150 more on June 5th and $167.40 on August 14th, and on the latter date he made, executed and delivered to Mrs. Lane his promissory note for $3,000 due one year after date. The aggregate of these three payments was $517,40; $500 is said to have been applied on the principal and $17.40 on the interest on the $3,500 note. On August 14, 1924, Bruno F. Kowalewski went to Mrs. Lane's home and told her that the Smiths who made the purchase-money mortgage were engaged in "some crooked scheme" in reference to the property upon which the trust deed was a lien, and that this fact rendered it necessary for him to have possession of the principal and coupon notes and trust deed so that he could protect her interest, and that unless she gave him these papers she would lose her money, and, therefore, she delivered them to him; that Kowalewski told her she would be protected because she was doing business with the Sherman State Bank; that he then handed her a paper which she did not read, but which she understood was a receipt; that afterwards the document turned out to be the personal note of Bruno F. Kowalewski for $3,000. It further appears that in order for Mrs. Lane to obtain the principal and coupon

notes and trust deed she went to the safety deposit box with Kowalewski on August 14, and he assisted her in opening the safety deposit box so that the papers could be obtained. On or about May 15, 1925, Bruno F. Kowalewski committed suicide and his estate is insolvent.

The record further discloses that on August 15, 1924, the day after Bruno F. Kowalewski had obtained the notes and trust deed from Mrs. Lane, the Sherman State Bank "acquired" the notes and trust deed from Kowalewski by paying him $3,526.05, $3,500 being the principal and $26.05 the accrued interest; that after Bruno F. Kowalewski had obtained the notes and trust deed from Mrs. Lane and had given her his $3,000 note he paid her $90, being the semiannual interest due on the $3,000 indebtedness remaining due and unpaid; that prior to January 1, 1925, Bruno F. Kowalewski, on account of irregularities in the conduct of the bank, was ousted from the office of president of the bank. The foregoing facts are stipulated by the parties.

It appears from the record that one of the theories advanced by Mrs. Lane on the trial was that Kowalewski, in obtaining possession of the principal note, coupons and trust deed, under the circumstances disclosed by the record, was guilty of larceny, and, therefore, obtained no title to the notes and trust deed and could not give any to the Sherman State Bank, even though it were a holder for value without notice, and this theory seems to have been adopted by the learned chancellor. The law has long been firmly established that an innocent holder for value of negotiable paper, endorsed in blank before maturity, is protected although the one from whom he received the note may have stolen it from the true owner. The general rule of law is that no one can give a better title to personal property than he has himself. But to favor commerce the law makes an exception to this rule as to negotiable paper and money. It is founded upon principles of

commercial policy; *Mann v. Merchants' Loan & Trust Co.,* 100 Ill. App. 224; *Shipley v. Carroll,* 45 Ill. 285; *Murray v. Lardner,* 2 Wall. (69 U. S.) 110; *Shaw v. Merchants' Nat. Bank of St. Louis,* 101 U. S. 557; *Tucker v. Bank,* 58 N. H. 83; *Saltus & Saltus v. Everett,* 20 Wend. (N. Y.) 267; *Wheeler v. Guild,* 20 Pick. (37 Mass.) 545; *Voss v. Chamberlain,* 139 Iowa 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106. See also section 52 of our Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 72. In the instant case, even if Bruno F. Kowalewski were guilty of larceny in obtaining the note and trust deed from Mrs. Lane, yet, if the Sherman State Bank was a bona fide owner for value without notice, it would obtain good title to the note. The only exceptions to this rule of law are where fraud or circumvention has been used in obtaining the execution of a negotiable instrument, Cahill's St. 1925, ch. 98, ¶ 11, or if such negotiable instrument was given in a gaming transaction. Cahill's St. 1925, ch. 98, ¶ 78. Neither of these exceptions are involved in the instant case.

We are of the opinion, however, that the Sherman State Bank was not an innocent purchaser, for value without notice, because Bruno F. Kowalewski in transferring the note and trust deed to the Sherman State Bank was the president of that bank. He was also a director and stockholder and acted for the bank in making the transfer and at the same time he was trustee in the trust deed. It has been decided by the Supreme Court of this State that a corporation making a purchase from its president of securities is not chargeable with his knowledge of infirmities in his title. *Higgins v. Lansingh,* 154 Ill. 301; *Seaverns v. Presbyterian Hospital,* 173 Ill. 414. But there are several well-considered cases which qualify the above rule of law and that qualification is that where the officer of the corporation is the sole or essential representative of the corporation in the transaction, his

knowledge is held to be imputable to the corporation. *Mutual Inv. Co. v. Wildman,* 182 Ill. App. 137. The *Wildman* case cites a number of authorities sustaining this qualification. We have examined them and agree with the conclusion reached by the court in that case. From the stipulation in the record it does not clearly appear who acted on behalf of the bank in the transaction, whereby Bruno F. Kowalewski, the president, director and stockholder of the bank, attempted to transfer the note and trust deed to the bank, but it does appear that he dominated the running of the bank and for aught that appears, he may have been the sole person involved in the transaction, representing himself on the one side and the bank on the other.

We are of the opinion that the decree should be affirmed for the further reason that the record discloses that the bank knew that Mrs. Lane owned the note and trust deed because every six months when it became due she obtained a coupon from the safety deposit box in the bank, presented it to the president and he ordered the cashier to pay her. The president of the bank had been for some time Mrs. Lane's financial adviser. He had caused himself to be named as trustee in the trust deed. The bank was, therefore, chargeable with notice of these facts and even if the bank, under the circumstances, might be considered an innocent holder, yet, the bank having made it possible for Kowalewski to perpetrate the fraud, the loss occasioned thereby should be borne by it. *Mann v. Merchants' Loan & Trust Co., supra.* The decree of the superior court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J., concurs.

MR. JUSTICE THOMSON dissenting: I am unable to concur in the decision of this case as set forth in the majority opinion. In view of the stipulation entered into between the parties, in which they agreed that all the facts therein recited were true, we must assume

that when Kowalewski obtained the mortgage and notes from Mrs. Lane on August 14, 1924, he accomplished that result by misrepresentations of fact and that in doing so he perpetrated a fraud upon her. We must also accept it as true that she thought the paper he gave her at that time was a receipt for her mortgage and notes. But it further clearly appears from the stipulated facts that Mrs. Lane must have known as early as February, 1925, what the nature of her transaction with Kowalewski, in 1924, really was. But she made no claim of fraud at that time and was quite satisfied to treat the paper which he had given her, in August, as a note; and it is clear that she took no other position until after Kowalewski had committed suicide and she found he was without any property and that he had left no estate, and then, for the first time, she took the position which she now seeks to establish, as against the plaintiff bank.

At the time Mrs. Lane turned over her mortgage and notes to Kowalewski, in August, 1924, she had been the owner of them over four years. On January 7 and July 7 of each year during that period, she had taken her interest coupons, calling for $122.50 each, to the bank where Kowalewski cashed them for her, apparently taking them for collection, but giving her the amount called for, in cash, whenever she brought them in. If Mrs. Lane merely turned over her mortgage and notes to Kowalewski, in 1924, to enable him to protect her against some fraud which the former owners of the property were supposed to be preparing to perpetrate, on which theory she would continue to be the owner of the mortgage and the notes, she was entitled to continue to collect the interest. The next semiannual interest payment on the mortgage was due the following January 7. At that time, on Mrs. Lane's theory, she was entitled to receive $122.50 interest on the mortgage. In the meantime, it appears, the plaintiff bank had purchased the mortgage, in good faith,

from Kowalewski, into whose possession Mrs. Lane had delivered it, and on January 7, 1925, it collected the $122.50 interest then due, as was consistent with its ownership of the mortgage. Mrs. Lane who now claims she owns the mortgage, and has owned it all the time, made no inquiry as to why she was not getting her usual semiannual interest and she does not appear to have even given that matter any thought. On the contrary, a month later she accepted $90 in cash from Kowalewski, which amount equals the semiannual interest then due on his note for $3,000. Mrs. Lane must have known that had nothing to do with any payment of interest on her mortgage. All the facts point to her knowing, at least at that time, that she held Kowalewski's note for $3,000, on which this was an interest payment and that the $3,000 represented by that note, plus the amounts he had paid her prior to August, 1924, was given her by him in the way of buying the mortgage and notes from her. That such was the real transaction is further indicated by the fact that when Kowalewski gave Mrs. Lane his note for $3,000 on August 14, 1924, he also gave her $167.40, and that odd amount added to previous sums he had given her, amounting to $350, and the $3,000 notes he was then giving her, equalled $3,500, the face of the mortgage and notes plus $17.40 which just equalled the interest on the mortgage which had been earned up to that date following the last semiannual interest payment on the mortgage, which had been paid July 7, previous. All of these facts, in my opinion, show conclusively that Mrs. Lane sold this mortgage to Kowalewski on August 14, 1924. If she did not know it then, she certainly did the following February. She no doubt thought Kowalewski was responsible financially, and for that reason she felt safe in exchanging her mortgage for his note, and she continued to be satisfied with it, even after he had been put out of the bank

and until he had committed suicide and she discovered that he had left an insolvent estate.

All the facts set forth in the stipulation were submitted under a provision contained in the last paragraph of the stipulation, to the effect that "the competency, relevancy and materiality of any stipulated facts are left entirely to the court, as well as the legal effect of the same." The statement of fact in the stipulation, to the effect that when Mrs. Lane asked Kowalewski how she would be protected in delivering her papers to him, he told her she was doing business with the Sherman Park State Bank, was clearly incompetent, and should be given no consideration by the court.

As stated in the majority opinion, our Supreme Court has held that a corporation purchasing securities of its president is not chargeable with any knowledge the latter may have as to infirmities in his title. *Higgins v. Lansingh,* 154 Ill. 301, 387; *Seaverns v. Presbyterian Hospital,* 173 Ill. 414. In the *Higgins* case, at page 388, the court said: "In such a transaction the officer, in making the sale and conveyance, stands as a stranger to the company. (*Stratton v. Allen,* 1 C. E. Green, 229.) His interest is opposed to theirs, and the presumption is, not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it. Where an officer of a corporation is thus dealing with them in his own interest opposed to theirs, he must be held not to represent them in the transaction, so as to charge them with the knowledge he may possess but which he has not communicated to them, and which they did not otherwise possess, of facts derogatory to the title he conveys." This quotation was made by the Supreme Court from *Barnes v. Trenton Gas Light Co.,* 27 N. J. Eq. 33, with approval. The exception to the foregoing rule, noted in the majority opinion, as set forth in *Mutual Inv. Co. v. Wildman,* 182 Ill. App.

137, arises where the president or other corporate officer who sells securities of his corporation is ''an essential representative'' of the corporation in the transaction. No fact or suggestion is included in the stipulated facts in the case at bar, showing, or tending to show, that when Kowalewski sold this mortgage and the notes to the bank, for their full face value, shortly after Mrs. Lane had turned them over to him in August, 1924, he was an essential representative of the bank in completing the transaction. If such were the fact, or if the bank in fact did not become a bona fide holder of these securities, as it purported to be, the burden was on Mrs. Lane to show it by a preponderance of the evidence. She not only failed to do that, but, in my opinion, there is no evidence at all to that effect. I am, therefore, of the opinion that the chancellor erred in entering the decree appealed from and that it should be reversed.