Fannie Montgomery, Appellee, v. Commercial Trust and Savings Bank, Appellant.

Gen. No. 38,786.

Opinion filed July 2, 1936.

ROBERT N. HOLT, of Chicago, for appellant.

HINSHAW & CULBERTSON, of Chicago, for appellee; OSWELL G. TREADWAY, of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendant appeals from an adverse decree entered after hearing by the court in a chancery proceeding.

Plaintiff alleged that on April 27, 1926, she was the owner of a promissory note for $13,000 drawing interest at six per cent, secured by a trust deed upon land in McHenry county, Illinois; **that she left** these papers with John F. Hahn for possible foreclosure; that subsequently, without her knowledge or consent these papers or their equivalent came into the possession of the defendant bank, which has **refused** to deliver them to plaintiff. Defendant answering says, among other things, that it secured title to the papers before maturity in good faith, for value and without notice of any infirmity. The decree found that the defendant took the note and trust deed with notice that plaintiff was the rightful owner and ordered defendant to deliver to plaintiff the note and any moneys paid to it on account of principal and interest.

There is little if any controversy as to the facts. Plaintiff is an elderly woman and had considerable business dealings with John F. Hahn, a real estate dealer, who advised her about business affairs; she purchased from him a note for $13,000 signed by James T. and Nellie K. Tait, secured by trust deed on a farm in McHenry county, Illinois; this was renewed but before the renewal period expired there was a default in the payment of interest.

April 27, 1926, plaintiff brought the Tait note and trust deed to Hahn and received from him a letter of the same date addressed to her, acknowledging receipt of the mortgage papers "for the purpose of possibly foreclosing on said property for the debt of $13,000 secured thereby"; the letter went on to say that having sold these papers to plaintiff as an investment and in accepting them "for the purpose stated," he guaranteed both the interest and principal.

Hahn had been in the real estate business for a number of years and had incorporated his business under the name of John F. Hahn, Inc., of which he was president, owning 95 per cent of the stock. He also was president of the defendant, Commercial Trust & Savings Bank, and was active in its affairs.

Shortly after Hahn received the Tait mortgage from the plaintiff he foreclosed and bid in at the foreclosure sale and took title in his own name and received a master's deed to the property. August 21, 1929, Hahn and his wife executed a new trust deed on the McHenry county property to secure his note in the sum of $13,000, payable to bearer; after the trust deed was recorded the papers were taken to the office of Hahn, Inc., and left in the custody of Garfield Anderson, an employee of Hahn, Inc., and Hahn told him to set them aside for Fannie Montgomery, the plaintiff; the papers, however, were never delivered to her.

Hahn, Inc., had a loan from the defendant bank to the amount of $35,000 and had deposited notes and mortgage securities as collateral; the securities so deposited were subject to sale by Hahn, Inc., and whenever sold were withdrawn from deposit with the bank and other securities substituted. Emil R. Zillman and Anderson, connected with Hahn, Inc., were authorized to make these exchanges with the defendant bank. Hahn, Inc., kept its securities in its vault.

Zillman testified he presumed it was about January, 1930, that he went to the vault of Hahn, Inc., where they kept their mortgages, and took the note and trust deed which Hahn had told Anderson to set aside for plaintiff, and substituted them for other collateral with the defendant bank. He testified that he did not know that plaintiff had any interest in the note and trust deed in question, that Hahn did not tell him it was her mortgage, and there was nothing on the papers to indicate that plaintiff had any interest in them.

There is no evidence that the employees at the bank who had charge of the collateral had any information at the time this was done as to any interest of plaintiff in these mortgage papers.

Mr. Hahn testified that he had no knowledge of the note or trust deed being in the bank until shortly afterward, when Mr. Wallace, one of the directors of the bank, called his attention to this particular note and trust deed, saying that he did not like the bank to have a mortgage on a farm in McHenry county and that he wished Hahn would exchange it for other collateral, but this was not done. Hahn never told anyone of plaintiff's interest in the mortgage papers until some years afterward at a meeting of the directors of the bank in November, 1933, when he told them of the transactions between himself and the plaintiff.

Hahn, Inc., went into bankruptcy in 1932, and in April, Hahn deeded his equity in the McHenry county farm to the receiver in bankruptcy, and at the receiver's sale the defendant bank bought the equity in the property.

Plaintiff always dealt with Hahn personally; she had no knowledge of the incorporation of Hahn, Inc., knew nothing of the bankruptcy proceedings and did not know that Hahn had given a deed to the property to the receiver; Hahn never informed her that he had foreclosed the Tait property and taken title in his own name or that he had made a new note for $13,000 secured by trust deed on the property; Hahn paid her interest to and including December, 1931; some time afterward she ceased to receive her interest and inquired of Hahn as to the matter and then learned that the bank claimed to own the note and trust deed.

Counsel for defendant presents a number of points which it is said require reversal, but we shall note only one decisive point, namely, Did the bank take the note and trust deed in good faith and for value,

without notice of any infirmity in the instrument or defect in the title of Hahn, Inc., which negotiated it? Chap. 98, par. 72, Negotiable Instruments Act (Ill. State Bar Stats. 1935) says one who does this is a holder in due course. Par. 76 of this statute further provides that, "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." A note received as collateral to another note is received in due course of business. *Chicago Bank of Commerce v. Kraft,* 269 Ill. App. 295; *Elgin Nat. Bank v. Goecke,* 295 Ill. 403; *Zollman v. Jackson Trust & Savings Bank,* 238 Ill. 290. Even where negotiable paper has been stolen and a bank takes it without notice of infirmities and before maturity it is a holder in due course. *Pflueger v. Broadway Trust & Sav. Bank,* 351 Ill. 170; *Graham v. White-Phillips Co., Inc.,* 56 Sup. Ct. 21; *Sherman State Bank v. Smith,* 244 Ill. App. 171, affirmed 330 Ill. 373. The bank had the right to assume that Hahn, Inc., which deposited the collateral, was the sole owner of the papers.

Plaintiff's contention is that Hahn, as president of defendant bank, knew that the trust deed and note did not belong to Hahn, Inc., but belonged to plaintiff, and that this knowledge must be imputed to the bank. Was the knowledge of Hahn in the transaction knowledge of the bank? The deposit of the papers in question as collateral with the bank was in the interest of Hahn, Inc. If Hahn, Inc., had no right to so use these papers, the transaction would be against the interest of the bank. The bank would not be chargeable with any knowledge of plaintiff's interest possessed only by Hahn, its president, which he did not communicate to it. Facts derogatory to the title to the property

deposited as collateral and known only to the president of the bank will not constitute notice to the bank of any infirmity in the title.

In the old case of *Higgins v. Lansingh,* 154 Ill. 301, at pp. 387–8, this rule is discussed. In that case Higgins assigned certain securities to which he did not have title to an insurance company of which he was president; it was held that Higgins at the time of this transfer was not acting as agent of the insurance company; that while ordinarily notice to the president of the corporation is also notice to the corporation, such is not the law when the president is dealing with it in his own interest and against the interest of the corporation of which he is president. This exception to the general rule rests upon the sound reason that where a president or other authorized officer of a corporation is selling tainted or irregular securities to his company it will be assumed that he would not make any communication to his company derogatory to these securities, to his title thereto, or their value. In such a transaction the officer making the transfer stands as a stranger to his company. This case was followed in *Seaverns v. Presbyterian Hospital,* 173 Ill. 414, the court saying, "where an officer of a corporation is dealing with the corporation in his own interest, opposed to its interest, he is held not to represent it in the transaction so as to charge it with the knowledge he may possess, but which he has not communicated to it and which it does not otherwise possess, of facts derogatory to the title he conveys." This has been reaffirmed in many cases. *Booker v. Booker,* 208 Ill. 529; *Merchants' Nat. Bank v. Nichols & Shepard Co.,* 223 Ill. 41; *Neagle v. McMullen,* 334 Ill. 168; see also *In re Estate of Wedelius,* 266 Ill. App. 69, and cases therein cited.

Cases cited by plaintiff do not depart from this. For instance, *Simmons v. Roseland Security Vault Co.,*

331 Ill. 563, did not involve the exception to the general rule we have just noted. This distinction is pointed out in the opinion in the *Wedelius* case, 266 Ill. App. 69. In *Mutual Investment Co. v. Wildman,* 182 Ill. App. 137, the exception to the general rule was stated but it was held that the case presented a qualification to the exception to the general rule, namely, where the officer of the corporation, although acting in his own interest, is the sole or an essential representative of the corporation in the transaction. Other cases cited by plaintiff can be likewise distinguished.

The deposit of plaintiff's mortgage papers with the bank on behalf of Hahn, Inc., was against the interest of the bank and for the interest of Hahn. Therefore, Hahn's knowledge cannot be imputed to the bank. Applying the law as above stated leads inevitably to the conclusion that the defendant bank took the mortgage papers without knowledge of any infirmity or defect in the title, in good faith and for value, and was a holder in due course whose title cannot be successfully assailed. It follows that the finding of the court, holding the bank responsible, was erroneous.

The decree is reversed and the cause remanded, with directions to dismiss the plaintiff's complaint for want of equity.

*Reversed and remanded with directions.*

MATCHETT, P. J., and O'CONNOR, J., concur.