(No. 18306.—Judgment affirmed.)
THE SHERMAN STATE BANK, Plaintiff in Error, *vs.* JOHN T. SMITH *et al.* Defendants in Error.

*Opinion filed April 21, 1928—Rehearing denied June 8, 1928.*

1. MORTGAGES—*when bank is not an innocent purchaser.* Where the president of a bank, who is trustee in a trust deed securing a note given for the purchase of real property, fraudulently obtains the note and trust deed from the owner while acting as her financial adviser and converts the same to his own use by disposing of them to the bank for value, the bank, in a foreclosure proceeding, must be charged with notice of the rights of the owner, where it had been in the habit of paying the interest coupon notes to her at the direction of its president and knew he was trustee in the trust deed, and such knowledge is sufficient to put it upon inquiry as to the title of its president, from whom it purchased the papers.

2. SAME—*what is not a ratification of alleged transfer of mortgage note.* Where the trustee in a trust deed, through false representations and while acting as financial adviser of the owner, obtains possession of the note and trust deed and converts them to his own use by selling them to a bank of which he was president, the act of the owner in afterwards accepting interest on a personal note of the trustee left with her when he obtained the trust deed and the note secured thereby is not a ratification of the alleged transfer which can be availed of by the bank on foreclosure, where she did not know of the fraudulent character of the transaction or understand that there had been any transfer, having supposed that the personal note was a receipt for the mortgage note.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

JAMES PERCIVAL PIO, for plaintiff in error.

HAYDEN N. BELL, for defendant in error Margaret J. Kelly Lane.

Per CURIAM: Margaret J. K. Lane sold and conveyed certain real estate in Cook county to John T. Smith and Annie E. Smith, his wife, as joint tenants, and received as part of the purchase price their note for $3500, dated July 20, 1920, payable to their own order and indorsed by them, payable five years after date and bearing seven per cent interest, payable semi-annually, as evidenced by interest coupons attached. The principal note and coupons were secured by a trust deed to Bruno F. Kowalewski of the purchased premises, his brother, Roman J. Kowalewski, being named as successor in trust. Peter Nedvar became the owner of the equity of redemption. The principal note and the last interest coupon being due and unpaid, the Sherman State Bank, claiming to own them, began a suit to the October term of the superior court of Cook county to foreclose the trust deed. Nedvar answered, confessing the amount due and alleging his willingness to pay it, but averring that Mrs. Lane claimed to be the owner of the notes and trust deed and that payment to any other person would not be a payment of the debt secured by the trust deed. He also filed a cross-bill, praying that the bank and Mrs. Lane be required to interplead and that he be permitted to pay the money into court for the benefit of the true owner. Mrs. Lane was made a defendant to this cross-bill and on her petition was allowed to become a defendant to the original bill. She answered the original bill and the cross-bill and also filed a cross-bill, alleging that the note and trust deed

had been obtained from her by Bruno F. Kowalewski by fraud and the bank acquired them with notice of her rights and was not a holder for value. Upon a hearing on a stipulation of facts the chancellor found the issues in accordance with the allegations of Mrs. Lane's cross-bill, that she was the owner of the notes and trust deed, that the amount due, $3622.50, with interest accrued from July 20, 1925, be paid to her by Nedvar, and that thereupon the notes and trust deed be surrendered and canceled and Roman J. Kowalewski, as successor in trust, execute a release. The bank appealed to the Appellate Court, which affirmed the judgment, and a writ of *certiorari* was awarded to bring the record before us for review.

In addition to the facts which have been stated, it appears from the stipulation of facts that prior to July 20, 1920, Bruno F. Kowalewski was to a certain extent the financial adviser of Mrs. Lane and caused himself to be named trustee in the trust deed. On and before that date he and his brother, as partners under the name of Sherman Park Safety Deposit Company, maintained at Fifty-first and Throop streets safety deposit boxes, one of which Mrs. Lane rented and in which she kept her valuable papers. It was her custom to take the interest coupons on the Smith note as they matured, to the complainant bank. Kowalewski, in his real estate office, would call to the cashier in the bank and instruct him to pay Mrs. Lane her interest. Kowalewski advanced to Mrs. Lane $200 on April 24, 1924, $150 on June 5, 1924, and on August 14, 1924, he gave her $167.40 and a note for $3000, due one year after date. The $17.40 of the $167.40 represented earned interest on the trust deed. On August 14 Kowalewski came to Mrs. Lane's home and told her, in substance, that the Smiths were engaged in some crooked scheme and were doing some crooked work about the property described in the trust deed, which rendered it necessary for him to have possession of the note and trust deed in order to protect her interests and

to save her the loss of the money, which she would certainly lose if she failed to deliver the note and trust deed to him, and he promised that if she would deliver them to him he would protect her interests and save her the loss of the money. Relying upon his statements and believing that if she failed to follow his advice she would lose her money Mrs. Lane delivered the note and trust deed to him, and, upon his statement that it was necessary, signed two papers, which were so folded as to hide their contents, which she did not know, but she signed them for the same purpose for which she delivered the note and trust deed to him. She asked him how she was to be protected in the delivery of the papers to him, and he told her, in substance, that she was doing business with the Sherman Park State Bank. He then handed her a paper which she did not read but understood to be a receipt, though she afterwards discovered it was his personal note for $3000. For the purpose of delivering the note and trust deed to Kowalewski she got her safety deposit box from the bank, and, with Kowalewski, opened it and removed from it the note and trust deed and such other papers pertaining to the matter as he claimed to need to protect her interests. Kowalewksi was then, and until January 1, 1925, president and a director of the Sherman Park State Bank, and the Sherman State Bank is successor in interest to the Sherman Park State Bank. He failed to return her note and trust deed to her or make any payment thereon except what has already been mentioned. On May 21, 1925, Mrs. Lane filed for record her affidavit giving notice to all whom it might concern of her interest in the note and trust deed and caused a like notice to be served upon Nedvar. The complainant bank acquired the trust deed on August 15, 1924, paying $3526.05 for it, of which $3500 represented the principal and $26.05 accrued interest, and placed the same among its assets.

Kowalewski obtained possession of the note and trust deed and the apparent title by fraud and deceit. There is

no question of proof—the facts are stipulated. He induced Mrs. Lane to believe that if she did not deliver the note and trust deed to him they would be lost to her through the rascality of Smith, and trusting his false statement she delivered the note and trust deed to him, receiving from him a paper which she supposed was a receipt. The next day he transferred the papers to the complainant. It is clear that he got the note by means of a confidence game, with the intention of swindling Mrs. Lane out of her property. She knew nothing of the transfer to the complainant, and the record contains no evidence that she ever learned of it in Kowalewski's lifetime. The delivery of the instruments to Kowalewksi effected no change in her interest in them, nor did the transfer by him to the complainant, assuming that it had notice or such information as to put the bank upon inquiry as to his title. At any time upon discovery of the fraud perpetrated upon her she might have proceeded to recover her property.

Plaintiff in error claims it is an innocent purchaser of the note before maturity. The only proof offered upon this question is, it is stipulated that plaintiff in error bought the note and trust deed from its president, B. F. Kowalewski, August 15, 1924, and paid therefor the principal and accrued interest on the note. That may or may not be sufficient proof that plaintiff in error was an innocent purchaser. It is undenied that Kowalewski obtained the securities from Mrs. Lane by fraud. As between Mrs. Lane and Kowalewski the title never passed to him. It appears from the stipulation that prior to plaintiff in error acquiring the note from its president the bank had some knowledge of the fact that Mrs. Lane owned the Smith note. It was stipulated her custom was to take the interest coupons to the plaintiff in error bank when they matured, and that the president, Kowalewski, would call the cashier of the bank and instruct him to pay Mrs. Lane her interest. Kowalewski, it is stipulated, was to a certain extent the financial adviser of Mrs.

Lane and was named as trustee in the trust deed securing the payment of the $3500 note. Plaintiff in error had knowledge, at the time of the purchase from Kowalewski, that he was the trustee in the trust deed for the owner of the note. It purchased them the next day after he had secured possession of them by the commission of a crime which prevented the title to the papers vesting in him, and we are of opinion the knowledge of the bank was sufficient to put it upon inquiry as to the title of its president, from whom it purchased the papers.

The facts in this case are not altogether but in many respects quite similar to the facts in *Chicago Title and Trust Co.* v. *Brugger,* 196 Ill. 96. In that case the court said: "When appellant, thus charged with notice of Brugger's ownership, chose to disregard the notice and to rely upon the representation of Schintz it did so at its own peril, and it cannot now throw upon Brugger the consequence of its having thus confided in Schintz's assurances. A person charged with notice who takes unmatured paper takes it subject to all the equities which reasonable inquiry by the taker, arising from such notice, would develop. Had the trust company made any inquiry of any of the parties to the note it would at once have discovered that Brugger was the true holder of the note. Being thus charged with notice it is immaterial whether or not the purported extension was binding upon Brugger." In that case Brugger had delivered the securities to Schintz to collect when due. An officer of the trust company asked Schintz, when he sold the securities to the trust company, for an explanation of Brugger's relation to the note and trust deed. Schintz said he himself was the owner, and relying on that statement the trust company purchased the securities. It does not appear in this case that plaintiff in error asked its president, Kowalewski, anything about the securities. It had notice that Mrs. Lane was, or claimed to be, the owner of the securities. It had notice that its president was the trustee in the deed

to secure the note to the legal holder. It made no inquiry of its president, or anyone else, as to how he came to be in possession of the securities. The slightest inquiry of Mrs. Lane would have disclosed that he was a thief and had acquired the securities fraudulently. Under these facts and circumstances we do not think it can be said plaintiff in error was an innocent holder for value. When Kowalewski acquired possession of the securities he represented to Mrs. Lane that she was doing business with plaintiff in error. He obtained the papers from Mrs. Lane by a gross fraud on August 14, 1924. He was then the president of plaintiff in error. He was also "to some extent" the financial adviser of Mrs. Lane. On the next day after obtaining the papers from Mrs. Lane he transferred them to plaintiff in error. January 1, 1925, he was ousted as president of the bank for previous misconduct in its management. How long his misconduct had continued before he was ousted does not appear, but he was removed from his office as president within less than a year after he acquired the note and trust deed from Mrs. Lane and transferred them to plaintiff in error. Under all the circumstances we think it was the duty of the bank to make inquiry as to Kowalewski's title before it purchased the papers, and not having done so it cannot sustain its claim to being an innocent purchaser.

It is also contended Mrs. Lane is estopped to repudiate the transaction with Kowalewski or that she had elected to ratify the substitution by him of his note for $3000 instead of the Smith note and trust deed. Mrs. Lane testified Kowalewski gave her, at the time she delivered to him the Smith note and trust deed, a paper which she did not read but thought it was a receipt. It turned out later to be Kowalewski's note to her for $3000. There is no evidence she discovered the fraud until February 4, 1925. On that day, it is stipulated, he paid her $90, "representing interest on the $3000 note." She had previously received payments from Kowalewski which would reduce the Smith

indebtedness to $3000, and it is contended that her receipt of the interest was a recognition and acceptance of the transfer of the Smith note and mortgage to Kowalewski and was a ratification effective from the date of the transfer. To estop a party the position taken must be with full knowledge of his right. Before Mrs. Lane can be bound by an election to accept the $3000 note of Kowalewski and ratify the transaction in delivering to him the Smith note and trust deed it must appear as a fact she intended to make the election, or the circumstances of the act must be such that the law raises a conclusive presumption that she intended to make the election. When, after she had delivered the Smith note to Kowalewski, Mrs. Lane discovered he had left her his own $3000 note, it was not unreasonable for her to assume that he, the president of a bank and her fiduciary, had done so for the convenience of.the bank of which he was president in preventing what he said was the crooked work of the Smiths to beat her out of her money. The $3000 note was signed by Mrs. Lane's trustee and "to some extent her financial adviser." She knew nothing of the fraud practiced on her or the transfer of her papers to plaintiff in error until after Kowalewski's suicide. She knew nothing of either of these matters at the time she received the $500 from Kowalewski or the $90 interest. She could at any time have repudiated the transaction transferring her securities to Kowalewski and recovered the property back for the fraud practiced on her in .obtaining them. In *Cowdrey* v. *Hitchcock,* 103 Ill. 262, the court quoted from 2 Story's Equity, section 1097: "Before any presumption of an election can arise, it is necessary to show that the party acting or acquiescing was cognizant of his rights." It seems to us it would be most unreasonable to hold that if Kowalewski were alive and still in possession of the papers, that Mrs. Lane's act in accepting the payment of $500 and the $90 interest would be a bar to recovering from him the securities. If she was bound by an election she

would be barred from recovering the securities against Kowalewski if he were alive and in possession of them as well as against plaintiff in error, who we have held is not an innocent purchaser. We agree with the Appellate Court that plaintiff in error "made it possible for Kowalewski to perpetrate the fraud," and the loss thereby occasioned should be borne by it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*