# Chicago Auto Sales Company, Appellee, v. H. J. Peters Company, Appellant.

## Gen. No. 26,028.

1. BILLS AND NOTES—*effect of act as to notice of infirmity.* Section 56 of the Negotiable Instruments Act (J. & A. ¶ 7695), providing that to constitute notice of an infirmity in the instrument or defect in the title, the person to whom it is negotiated must have had "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith," did not materially change the law existing at the time of its passage.

2. BILLS AND NOTES—*what does not constitute notice of infirmity in note of corporation.* Where a promissory note of a corporation, regular upon its face, was given by the president in partial payment for an automobile for his personal use and the payee, upon noticing that it was not properly indorsed, returned it to the secretary who, with the president, owned practically all of the capital stock, and the note was thereafter returned to the payee properly indorsed, whereupon the automobile was released to the president,

364        APPELLATE COURTS OF ILLINOIS.

Chicago Auto Sales Co. v. H. J. Peters Co., 221 Ill. App. 363.

the payee did not have actual knowledge of an infirmity in the instrument or knowledge of such facts that its action in taking the instrument amounted to bad faith, within the meaning of the Negotiable Instruments Act, so as to prevent the payee from being a holder in due course.

3. CORPORATIONS—*when estopped to contest validity of note given for personal purchase of president.* Where the president and secretary of a corporation owned practically all of its corporate stock and the president executed a note of the corporation in partial payment for an automobile for his private use and the secretary, seemingly with knowledge of the transaction, assisted in securing the proper indorsement of the president at a time when the payee had not parted with possession of the automobile, the corporation is equitably estopped to contest the validity of the note.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Affirmed. Opinion filed June 24, 1921.

ADELOR J. PETIT, for appellant; H. G. COLSON, of counsel.

MARSHALL E. GALLION, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff brought an action in the municipal court of Chicago against defendant on the following promissory note:

$1,000                           Chicago, July 15th, 1916.

"One year after date we promise to pay to the order of H. J. Peters, one thousand dollars, at 320 So. Wabash Ave., Chicago, Ill. Value received with interest at the rate of 6 per cent per annum.

(Signed) H. J. Peters Co.

H. J. Peters, Pres."

The note was indorsed by H. J. Peters as follows: "Pay to the order of Chicago Auto Sales Co., H. J. Peters." The defense as stated in defendant's affidavit of merits was (1) that the note was not the note of the defendant corporation; (2) that it was not executed in the course of its business or for its benefit,

and that said H. J. Peters was not authorized by said corporation to execute the same, and that his act in doing so was ultra vires and void; and (3) that plaintiff knew that the execution of the note was not in the course of business of the defendant corporation or for its benefit. The cause was tried before the court without a jury, resulting in a finding and judgment against defendant in the sum of $1,119, and this appeal followed.

On the trial the following facts, in substance, were disclosed: The defendant was a trading corporation, having a capital stock of $18,000 divided into 180 shares, of which H. J. Peters owned 120 shares and Fred D. Fox the balance with the possible exception of one or two shares. Peters was the president and Fox the secretary and treasurer of the corporation. Prior to the execution of the note in question, it appears that about 100 notes of the defendant corporation had been executed to pay its debts in the usual course of its business, signed by Peters as president in its name and delivered; that these notes had been executed without any resolution of the board of directors but solely under Peters' general authority as president; and that these notes so executed had been paid afterwards by the corporation. On July 15, 1916, Peters purchased of plaintiff a new automobile for his own personal use, of which fact the president of plaintiff, Emil J. Krinsky, had knowledge. In part payment of the purchase price of the automobile, Peters executed and delivered the note in question to Krinsky at defendant's place of business. Krinsky testified, in substance, that when he received the note nothing was said to him by Peters concerning the affairs of the defendant company except that it "owed him money"; that when the note was first given him it was not properly indorsed and that he "would not release the automobile until it was properly indorsed in the presence of Mr. Fox." Fox testified, in substance, that the book-

keeping part of defendant's business was done under his direction as secretary and treasurer; that he did not recall any note of the defendant company being given at any time for any obligation of any one aside from the obligations of the defendant company; that he was not present when the note in question was signed or indorsed, but that he was in the office of the corporation when Krinsky returned the note and left it with him to be indorsed; that he did not recall having had at that time any discussion with Krinsky concerning the note; that he "referred the note to Mr. Peters, telling him of the request Mr. Krinsky had made"; and that the automobile purchased by Peters was never used for the purposes of defendant's business. Peters was not a witness at the trial.

Counsel for the respective parties in their printed arguments here filed agree that the main question to be decided is: Is the plaintiff, under the facts disclosed, a holder in due course of the note in question? Counsel for defendant contend that plaintiff is not a holder in due course. And as we understand their argument it is, in substance, that while the instrument in question is complete and regular upon its face and plaintiff became the holder of it before maturity and for value, still plaintiff had notice of an infirmity in the instrument or of a defect in the title of Peters who negotiated it; that plaintiff, through its president, Krinsky, knew that the instrument was given in payment of a personal debt of Peters and not a debt of defendant; that, this being so, the law put plaintiff upon notice that Peters had no power, as president of defendant, to execute the instrument and make it binding upon defendant unless specially authorized by its directors or officers, and no such special authorization was had; and that hence plaintiff is not a bona fide holder of the instrument in due course, and, in such case, as the instrument under section 58 of the present Negotiable Instruments Act of this State [J. & A.

¶ 7697] is subject to the same defenses as if it were non-negotiable, and as no recovery under the circumstances could be had by Peters from the defendant were he suing on the instrument, plaintiff cannot recover.

Section 52 of the "Act in regard to Negotiable Instruments payable in money," in force July 1, 1907 (Hurd's Rev. St. 1917, ch. 98, sec. 70, J. & A. ¶ 7691) provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1.   That the instrument is complete and regular on its face.

"2.   That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3.   That he took it in good faith and for value.

"4.   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 56 of said act [J. & A. ¶ 7695] provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Prior to the passage of said act our Supreme Court in the case of *Bradwell v. Pryor*, 221 Ill. 602, 605, decided in June, 1906, said:

"The rule now is, that the indorsee or assignee of commercial paper who takes the same before maturity for a valuable consideration, without knowledge of any defects and in good faith, will be protected against the defenses of the maker, and mere suspicion of defect of title or the knowledge of circumstances calculated to excite suspicion in the mind of a prudent man, or even gross negligence on his part at the time of the transfer, will not defeat his title. In other words, the only thing which will defeat his title is bad faith on his part, and

the burden of proof is upon the person assailing his right to establish that fact by a preponderance of the evidence.   *   *   *   However harsh this rule may, on first impression, seem to be, it is based upon the policy of the law which gives full faith and credit to commercial paper transferred before maturity, so that it may circulate, as far as possible, with all the conveniences of currency.''

In view of said section 56 of 'the present Negotiable Instruments Act, wherein is provided that, to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had *"actual knowledge* of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to *bad faith,''* it would seem that said act has not materially changed the rule in this State from what it was declared to be in the *Bradwell* case, *supra.*

Counsel for defendant, in support of their argument above outlined, cite a number of adjudicated cases outside of Illinois, among them the cases of *Park Hotel Co. v. Fourth Nat. Bank of St. Louis,* 86 Fed. 742, decided by the United States Court of Appeals of the Eighth Circuit in 1898, and *Capital City Brick Co. v. Jackson,* 59 S. E. 92 (2 Ga. App. 771), decided by the Court of Appeals of Georgia in 1907.   In each of these cases the judgment rendered by the trial court against the defendant corporation, in 'favor of the holder of a note executed under somewhat similar circumstances by the president of the corporation in its name, was reversed and a new trial granted.   In the case first mentioned it appears that in 1891 the Park Hotel Company was a corporation located at Hot Springs, Arkansas, and Ed. Hogaboom was its president; that on February 28, 1891, without paying the corporation any consideration therefor, and without the knowledge or consent of any other officer or agent of the Hotel Company, Hogaboom executed a promissory note for

$15,000, signed in the name of the Hotel Company by himself as president, and payable on June 28, 1891, to the order of himself individually; that he indorsed his name on the note and discounted it at the plaintiff bank, pledging as collateral security certain shares of stock which he owned, and spent the proceeds of the discount procured from the bank for his own personal use; that the note was renewed from time to time and later he executed a new note in the name of the corporation, payable to the bank; and that finally he failed in business and the bank commenced suit against the Hotel Company on said substituted note. In delivering the opinion of the court, Sanborn, Circuit Judge, said in part ('p. 744):

"While a promissory note, made by an agent or officer having such authority, in the usual form, and taken by a stranger in the ordinary course of business, carries with it the presumption that it was issued for corporate purposes, and under lawful authority, a note issued by such an agent, payable to himself, is accompanied by no such presumption, but is itself notice that it is without the scope of his general power, and that it does not bind his principal, unless its execution was especially authorized by the corporation, through its directors or officers, other than the agent to whom it is payable. Such a note is a danger signal, which the discounter or purchaser disregards at his peril. It is notice to him that, if it is contested, he cannnot recover on it, under any general authority in the agent, or at all, unless he proves that the agent was especially authorized to make that particular transaction, or to make contracts of the corporation with himself."

In the *Capital City Brick Co.* case *supra,* the note in question was signed in the name of the brick company by T. F. Stubbs, president, payable to the order of Stubbs, was indorsed by him in blank and transferred to the plaintiff, Jackson, in payment of a pre-existing debt which Stubbs owed him and in which the brick company had no interest. The defense of the brick

company was that Stubbs had no authority to make the note, and that plaintiff was not a bona fide holder of the same, as he knew that Stubbs had no such authority, or could have known it by making reasonable inquiry. There are a number of other somewhat similar decisions in other jurisdictions, and among them may be mentioned *Chemical Nat. Bank v. Wagner*, 93 Ky. 525; *Kenyon Realty Co. v. National Deposit Bank*, 140 Ky. 133; *Porter v. Winona & D. Grain Co.*, 78 Minn. 210; *New York Iron Mine v. First Nat. Bank of Negaunee*, 39 Mich. 644; *Saylor v. Commonwealth Investment & Banking Co.*, 38 Ore. 204; *Luden v. Enterprise Lumber Co.*, 146 Ga. 284.

In view of the facts and circumstances disclosed in the present record, the decision of our Supreme Court in the *Bradwell* case, *supra*, and the provisions of the present Negotiable Instruments Act of this State, we do not think that the decisions in the cases cited by counsel for defendant above mentioned should control. In the present case the note in question was signed in the name of the defendant corporation by its president, Peters, and was made payable to Peters' order, and was by him indorsed and delivered before maturity to plaintiff's president, Krinsky, in part payment of an automobile which Peters had purchased of plaintiff for his own individual use. At the time the note was first delivered to Krinsky, Peters told Krinsky that the defendant company "owed him money." The circumstances were such as were calculated to excite suspicion in Krinsky's mind as to the validity of the note, and he acted on those suspicions. Discovering that the note had not been properly indorsed, he decided that he "would not release the automobile" until the note had been properly indorsed in the presence of Fox, who was the secretary and treasurer of plaintiff, owning about one-third of the capital stock of the corporation, and who with Peters controlled the corporation. And, as appears from the testimony of Fox,

Krinsky called at defendant's office, saw Fox and left the note with him to be indorsed, and Fox "referred the note to Mr. Peters, telling him of the request Mr. Krinsky had made," and later plaintiff received the note indorsed by Peters as shown and released the automobile. Under these peculiar circumstances we do not think that when plaintiff finally released the automobile it, through its president, Krinsky, had "actual knowledge" of an infirmity in the instrument or defect in Peters' title, or "knowledge of such facts that its action in taking the instrument amounted to bad faith." Furthermore, we think that the defendant corporation is equitably estopped to now contest the validity of the note. Peters and Fox owned practically all the capital stock and were the only officers of the corporation. Peters executed the note and Fox, seemingly with knowledge of the transaction, assisted in securing the proper indorsement of Peters on the note and at a time when plaintiff had not parted with the possession of the automobile.

Our conclusion is that the judgment of the municipal court should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and MATCHETT, J., concur.