Chicago Bank of Commerce, Appellee, v. J. L. Kraft, Appellant.

Gen. No. 36,299.

Opinion filed February 6, 1933.

NICHOLSON, CRANDALL & SNYDER, for appellant; JOHN T. CHADWELL and RUSSELL GREENACRE, of counsel.

FRANCIS E. MATTHEWS, for appellee; JOSEPH R. HARMON and CLEMENT F. SPRINGER, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

January 2, 1930, defendant made his promissory note to the order of the Old Dearborn State Bank for $11,428, due January 2, 1932. It contained a power of attorney to confess judgment, which was exercised February 4, 1932, when judgment by confession was entered against defendant for $12,413.23. Motion was made to vacate and set aside the judgment, supported by an amended affidavit; the court denied this motion and defendant appeals from this order. Defendant asserts here that his amended affidavit shows that

there was no consideration for the note and that the plaintiff, Chicago Bank of Commerce, a corporation, is not a holder in due course.

Defendant's amended affidavit alleged that the Old Dearborn State Bank, the payee in the note, did not part with any consideration when it received the note; that the defendant received no consideration on account of the execution and delivery of the note; R. A. Drum, then president of the payee bank, told defendant, who was a stockholder, that the bank had incurred a loss of $17,142 in connection with liquidating a certain indebtedness owed to it by one Coambs; that Drum said that he desired to donate to said bank two-sixths of said deficit, or the sum of $5,714, and Drum requested the defendant to execute and deliver his note to the bank for that amount, and Drum would give defendant his note for this amount. Defendant agreed to this. The affidavit further states that thereafter Drum suggested to defendant that defendant also donate to the bank two-sixths of the aforesaid loss or deficit, and that in making the contributions of Drum and of defendant, each in amount equal to two-sixths of the deficit, the defendant should execute and deliver to the bank a note for four-sixths of said deficit, or for $11,428; that voluntarily and without any consideration, but in compliance with Drum's request, defendant executed and delivered the note for this amount, upon which judgment was confessed in this case, and Drum delivered to defendant his note for $5,714; that at the time he, defendant, was a stockholder of the bank and that no statement or representation was made to him that the bank was or might become insolvent by reason of sustaining the aforesaid loss upon the Coambs transaction, and the defendant gave no thought to any such possibilities, and that no representations were made to him as to the effect of his said judgment note upon the value of his shares of stock in the bank; that the only reason for signing the

note was that defendant thereby made a contribution to the bank.

As touching defendant's claim that plaintiff was not a holder in due course of the note, the affidavit alleges that on or about March 28, 1931, plaintiff acquired all the assets and assumed the deposit liabilities and other liabilities of the Old Dearborn State Bank; that the Old Dearborn State Bank executed and delivered to plaintiff its note in the amount of the deposit liabilities and certain other liabilities, which note was for the principal sum of $2,468,529.79, payable 18 months after date, and that all of the assets of the Old Dearborn State Bank were pledged as collateral for the aforesaid note, and included in the collateral was the note made by defendant upon which judgment was confessed in this case; that since that time plaintiff has continued to carry on the business theretofore conducted by said payee bank; at the time plaintiff acquired defendant's note it also acquired possession of, and its officers and agents had access to and took possession of, all files, books and records of said payee bank, including letters, correspondence and documents, showing the facts of the transactions between defendant and said payee in connection with the note upon which judgment was confessed.

We shall first consider this last point. As the note was due January 2, 1932, and was taken by plaintiff as collateral on March 28, 1931, it became the holder before maturity. Paragraph 79 of the Negotiable Instruments Act, chapter 98, Illinois Stats. (Cahill) provides that every holder is deemed prima facie to be a holder in due course. Paragraph 72 defines a holder in due course as one who has taken the instrument under the following conditions:

(1) That the instrument is complete and regular upon its face.

(2)   That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

(3)   That he took it in good faith and for value.

(4)   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Defendant concedes that the first three conditions exist, but argues the irregularity of plaintiff's title by virtue of the fourth condition, for the reason that where one bank takes over and assumes liabilities of another bank, the bank taking over such assets is not a holder in due course of negotiable instruments included in such assets. Defendant cites in support of this proposition *National Bank of Rochester v. Erion-Haines Realty Co.,* 123 N. Y. Misc. 873. Here a bank was organized for the purpose of taking over the assets of two national banks and by contract assumed certain liabilities. The New York court held that the transaction was controlled by provisions of the National Bank Act, which provides that upon consolidation of two national banks, the new bank owns the property of the old bank in the same manner and to the same extent as it was held by the old bank. The plaintiff bank in the present case is not governed by the provisions of the National Bank Act. *Baach v. Bank of Pocahontas,* 157 Va. 274, is not applicable, as, under the contract whereby the plaintiff bank acquired the assets of another bank, it was provided that the assignee bank should have discretion in collecting the assets of the assignor bank, but if the assignor bank should demand, the assignee bank must take such action as the assignor bank might direct with reference to the collection of assets. Counsel for plaintiff says the decision in this case has been criticised in 80 University of Pennsylvania Law Review, 447. In *Bank of Tallassee v. Jordan,* 200 Ala. 182, the holding bank

was under contract to render an accounting in one year and a final accounting in two years, of its efforts to collect the assets and bills of the other bank. The decision in this case has also been criticised in Brannan on Negotiable Instruments, 4th ed., page 374. A similar state of facts is found in *Farmers' & Merchants' State Bank & Trust Co. v. Cole* (Tex. Civ. App.), 220 S. W. 354, where the holding bank was under contract to deliver to the assignor bank at the end of two years all its uncollected assets. In all these cases the holding bank was held to be the agent or trustee to collect for the assignor bank. *Fehr v. Campbell,* 288 Pa. 549, held that a person who takes paper, payable to a corporation, from one of its officers in satisfaction of the officer's personal indebtedness, is not a holder in due course because of his bad faith in taking such paper under such circumstances. In *Drumm Const. Co. v. Forbes,* 305 Ill. 303, the court said:

"The act (The Negotiable Instruments Law) in using the term 'holder in due course' used it as an equivalent for the old expression, '*bona fide* holder for value without notice.' (8 Corpus Juris, 464.) The act, in so far as it defines a holder in due course, does not change the common law rule as to who is a *bona fide* holder, except, perhaps, by eliminating the requirement that the transfer must be in the regular course of business. (8 Corpus Juris 465.)"

In *Sturdivant Bank v. Houck* (Mo. App.), 47 S. W. (2d) 135, the court, considering a contention almost identical with that made by counsel for defendant, said:

"With respect to the suggestion of defendant that the transfer of the note in suit, along with all the other assets of the bank, was not a transfer in the usual course of business, it will suffice to say that section 2680, R. S. 1929 (The Negotiable Instruments Law), defining a holder in due course eliminates this

requirement of the common law.''. In that case the court discussed the relation between the Cape Exchange Bank and the Sturdivant Bank, which took over its assets and liabilities, and held that the latter bank was not merely a trustee or liquidating agent, but that it was obligated to pay the liabilities of the Cape Exchange Bank without regard to the amount it might realize from the assets transferred to it. In *Trustees of American Bank of Orange v. McComb*, 105 Va. 473, the American Bank transferred all of its property to the plaintiff trustees. Defendant claimed that plaintiffs were not holders in due course as they did not acquire the paper by indorsement and delivery. The Supreme Court of Virginia held that the trustees were holders in due course, notwithstanding they did not acquire the note in the usual course of business. It should be noted that in the instant case the note was regularly indorsed by the Old Dearborn State Bank to the order of the plaintiff bank.

Defendant's affidavit precludes the idea that plaintiff bank in taking the note in question was merely the trustee or agent of the Old Dearborn State Bank. Plaintiff took the note as collateral to the note of the Old Dearborn State Bank. As stated in 8 Corpus Juris, 471, under the Negotiable Instruments Act, a holder may be a holder in due course notwithstanding he has not received the paper in the ordinary course of business, yet, where one receives paper as collateral to another note, such collateral is received in the ordinary course of business. This applies to the instant case, and we are of the opinion that the plaintiff was the holder of the note in question in due course.

But defendant asserts that the plaintiff took the note with knowledge of the fact that defendant had received no consideration for it, and hence plaintiff took with notice of an infirmity in the instrument. Section

56 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 76, provides that to constitute notice of an infirmity in the instrument "the person to whom it is negotiated must have had actual knowledge of the infirmity . . . or knowledge of such facts that his action in taking the instrument amounted to bad faith." Defendant says that its amended affidavit alleged that when plaintiff acquired possession of the note in question it took possession of the records, papers, and letters of the Old Dearborn State Bank, which records included correspondence and documents with respect to the aforesaid note showing the facts of the transactions out of which the note arose. The affidavit does not state that plaintiff had actual knowledge of any infirmity, but defendant argues that plaintiff should or could have known of the circumstances, and therefore it was guilty of bad faith in taking the note. The affidavit merely asserts that the letters and documents showed "the facts of the transactions between the Old Dearborn State Bank and defendant as set out hereinabove," but does not show what were the facts contained in such letters and documents. In *Crossman v. Wohlleben*, 90 Ill. 537, the court said, in applications to set aside judgments entered by default or entered in *ex parte* proceedings, affidavits in support of said applications are to be construed most strongly against the party making the application. In *Duddleston v. Eckhart*, 134 Ill. App. 656, it was held that such affidavits must set forth "the particular evidentiary facts . . . substantially as they should be proven on a trial." In many other cases it has been held that the statement of mere conclusions in such affidavits is not sufficient; that they should set forth the facts from which the court can draw the conclusions. *Carpenter v. White*, 43 Ill. App. 448; *Schultz v. Plankinton Bank*, 40 Ill. App. 462, affirmed in 141 Ill. 116.

From the allegations of defendant's affidavit setting forth what are said to be the facts of the trans-

action, it appears that the alleged agreements between president Drum of the Old Dearborn State Bank and the defendant with reference to the notes were oral agreements. It is a reasonable inference that they would not be shown by any letters, correspondence, or documents.

It should be noted that the affidavit does not assert that any officer read or had knowledge of any documents showing the facts of the transaction, but merely that they had "access to" and had "taken possession of" such documents. This is not sufficient. In *Comstock v. Hannah*, 76 Ill. 530, it was said of a party who takes commercial paper before due, that:

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can only be produced by bad faith on his part." To the same effect was the holding in *Corn Belt Bank of Bloomington v. Forman*, 264 Ill. App. 589, and cases there cited. See also *Mt. Vernon Nat. Bank v. Kelling-Karel Co.*, 189 Ill. App. 375; *Biegler v. Merchants' Loan & Trust Co.*, 164 Ill. 197; *Zollman v. Jackson Trust & Savings Bank*, 238 Ill. 290; also *Aldrich v. Peckham*, 74 N. J. L. 711. Applying the rule stated in these cases, it follows that when plaintiff acquired defendant's note it became a holder in good faith, for value, without notice of any infirmities.

We are also of the opinion that the circumstances disclosed by the affidavit show that the note was executed and delivered for an adequate consideration. We shall discuss this phase only briefly.

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." Chapter 98, ¶ 44,

Illinois Statutes (Cahill). This is a presumption of fact and cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. *American Nat. Bank of Mt. Carmel v. Woolard,* 342 Ill. 148.

Defendant's affidavit says that Drum requested him to execute his note to Old Dearborn State Bank for $11,428, and that he, Drum, in turn would give defendant his note for $5,417, and that defendant did so "in compliance with said requests." Obviously, Drum and defendant gave mutual promises, that if one would give $5,417 on account of the deficit arising from the Coambs transaction, the other would do the same. Defendant has received Drum's note for the amount Drum said he would contribute, and "said note is still held by defendant." It is almost uniformly held that a mutual promise to contribute towards a common cause or undertaking is a sufficient consideration for a promise. In *Congregational Society v. Perry,* 6 N. H. 164, the court said, when several agree to a common object which they wish to accomplish, the promise of each is a good consideration for the promises of the other. *Utah Nat. Bank v. Nelson,* 38 Utah 169, involved contribution of two bank officers to the bank in order to prevent a run—facts very similar to those in the instant case. It was held, after discussing many cases, that a mutual promise to contribute to a common undertaking is a sufficient consideration for a promise. See also *Hostetter v. Hollinger,* 117 Pa. 606; *Underwood v. Waldron,* 12 Mich. 73; *Rothenberger v. Glick,* 22 Ind. App. 288.

Both Drum, the president of the Old Dearborn State Bank, and the defendant were stockholders. Defendant in his affidavit asserts that in executing the note he gave no thought to this, and that no representations were made to him as to the effect of said note upon the value of his shares of stock. Whatever may have been

in defendant's mind at the time, it is manifest that by his contribution toward the Coambs deficit he did in fact add to the value of his stock. In section 21, Williston on Contracts, volume 1, the author says that the common law does not require any positive intention to create a legal obligation as an element of contract; that the law and not the intention of the parties fixes the requirements of a legal obligation. Cases cited by defendant, like *Turner v. Porter,* 264 Ill. App. 15, are not in point. There the maker of the paper was an entire stranger to the transaction. Here both Drum and defendant were interested as stockholders in reducing the loss arising out of the Coambs transaction.

Defendant was personally connected with this transaction. The entire indebtedness of Coambs to the bank was $87,998.93. From the affidavit it appears that a note of defendant for $71,000 was applied against this indebtedness. It is a fair presumption that this note was part or all of the personal property conveyed by Coambs to the bank in consideration of the cancellation of his indebtedness. The balance owed by Coambs which the bank agreed to discharge was over $17,000. The affidavit is meager as to the facts of this Coambs transaction, but construing it most strongly against the defendant, it may be reasonably inferred that this balance of indebtedness of Coambs which the bank agreed to release was a sufficient consideration for defendant's note, which was given to apply on account of said deficit. Chapter 98, ¶ 45, Illinois Statutes (Cahill) provides that "An antecedent or pre-existing claim . . . constitutes value where an instrument is taken either in satisfaction therefor or as security therefor . . . ." 80 A. L. R. 676. In *Elgin Nat. Bank v. Goecke,* 295 Ill. 403, it was held that one who has taken a negotiable note before maturity as collateral security for a pre-existing debt is deemed a holder for a valu-

able consideration. See also Brannan on Negotiable Instruments, 358, which likewise states this to be the law. *Neal v. Wilson,* 213 Mass. 336, is also in point. It follows from these considerations that when defendant gave his note at the request of the president of the bank, to cover the balance due from Coambs, the pre-existing indebtedness of Coambs was a sufficient consideration for the note.

To have discussed all the cases cited by respective counsel would have made this opinion much too long. After giving due consideration to all the points raised, we are of the opinion that the order of the trial court in denying defendant's motion to vacate the judgment was proper and it is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.