The National Bank of the Republic of Chicago, Appellant, v. Uptown State Bank of Chicago, Appellee.

Gen. No. 37,023.

Opinion filed February 5, 1934. Rehearing denied February 19, 1934.

LORD, LLOYD & BISSELL, for appellant; JOHN S. LORD, A. C. WETTERSTORM and GRAYDON H. ELLIS, of counsel.

ERNEST A. EKLUND, for appellee; EUGENE P. KEALY and FAY WARREN JOHNSON, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of trover claiming that the defendant had converted to its own use four bonds

of $1,000 each, made by the Bethlehem Steel Corporation, which belonged to plaintiff. The case was tried before the court without a jury. At the conclusion of plaintiff's evidence the defendant rested, and there was a finding and judgment in defendant's favor, and plaintiff appeals.

Plaintiff's theory of the case was that it owned five bonds of $1,000 each, issued by the Bethlehem Steel Corporation, which were stolen from it, and that four of the bonds were in the possession of the defendant. Defendant's theory was that the bonds were negotiable and that it was a bona fide holder in due course. The court sustained the defendant's contention and judgment was entered accordingly.

The record discloses that on March 21, 1930, the Cosmopolitan State Bank of Chicago delivered to plaintiff five bonds of $1,000 each, made by the Bethlehem Steel Corporation, and received credit on that day of $5,250, the value of the bonds. On the same day they were stolen from the plaintiff bank, but this fact was not discovered until some days later when the Cosmopolitan Bank found that it had not been credited by plaintiff for the bonds. April 4, 1930, after plaintiff had learned the bonds were stolen from it, there is evidence to the effect that the Protective Department of the Illinois Bankers' Association, to which a number of banks belonged, including plaintiff and defendant banks, mailed out a typewritten bulletin, the third item of which stated that the five Bethlehem Steel bonds were reported to have been stolen, and to communicate with the Bankers' Association in case anyone sought to dispose of them.

June 23, 1930, George L. Farry, who was president and owned most of the stock of the Fidelity Motors Company, a corporation, and had for many years done business with defendant bank, applied for a loan for the Motors Company from defendant bank, but his

collateral was not acceptable and the loan was not. made at that time. Afterward, June 30th, he again took the matter up with the cashier of defendant bank, who refused to make the loan without collateral; thereupon Farry went downstairs to the safety deposit vaults in defendant's bank building, got the four bonds in question out of his box and pledged them as collateral to his personal note for $4,000, due 30 days after date. Upon the execution of the note defendant bank executed its cashier's check payable to Farry for $3,980, being the proceeds of the note; Farry indorsed the check personally and also indorsed it in the name of the Fidelity Motors Company, of which he was president, and the money was deposited in the defendant bank, to the credit of the Fidelity Motors Company. Shortly thereafter, on the same day, defendant bank learned that the bonds had been called for payment at 105, notified Farry of this fact, and by agreement with him defendant sent the bonds for collection to the Guaranty Trust Company of New York City. Upon receipt of the bonds by the Guaranty Trust Company it, on July 2nd, notified defendant that the bonds had been stolen and returned them to defendant. Defendant, upon being notified by the New York Bank that the bonds had been stolen, advised Farry of this fact, and July 3rd it made entries on its books debiting the Fidelity Motors Company $3,980, and crediting Farry's account $4,000, but the note was not canceled. A few days thereafter plaintiff notified the defendant that the bonds had been stolen from it.

July 7th, Farry objected to the fact that the money had been charged against the Fidelity Motors Company, and after some conferences, at which counsel was present, the Motors Company was again credited with the $3,980. Plaintiff made demands on defendant for the bonds, which were refused, defendant claiming that it was the bona fide holder for value in due course.

March 7, 1931, the Bethlehem Steel Corporation paid the defendant the amount of the bonds at the rate of 105 or a total of $4,200, and apparently the bonds were surrendered by defendant to the Bethlehem Steel Corporation.

Plaintiff contends that the judgment was wrong and should be reversed because (1) the evidence fails to show that the bonds were negotiable within the meaning of the Negotiable Instruments Law; (2) that several months before the defendant made the $4,000 loan to Farry or to the Fidelity Motors Company and obtained the four bonds in question as collateral, defendant was advised by the Illinois Bankers' Association through the mail that the bonds had been stolen and therefore defendant was not a bona fide holder in full; and (3) that since the defendant had not paid out the proceeds of the $4,000 loan and had not disposed of the bonds before it knew they were stolen, defendant was not a holder in due course.

We think the first and second contentions made by plaintiff cannot be sustained. A reading of the record discloses the fact that the case was tried on the theory that the bonds were negotiable within the meaning of the Negotiable Instruments Law and it is elementary that plaintiff cannot shift his position in a court of review. The bonds were not in evidence, so their provisions cannot be ascertained, but the evidence shows they were held by the Cosmopolitan Bank; that they were delivered by it to the plaintiff bank and later accepted by defendant bank as collateral for the loan; they were payable to bearer and there is other evidence all to the effect that they were considered by all parties as negotiable in every sense. And, as stated, there was no suggestion on the trial that the notes were anything but negotiable instruments. (2) There is evidence in the record that the Illinois Bankers' Association mailed to its members, including plaintiff and

defendant, a typewritten bulletin under date of April 4, 1930, the third item of which stated that it had been reported that the bonds in question had been stolen. But the evidence does not show specifically that a copy was mailed to defendant. But even if the evidence might be held sufficient on this point, defendant's cashier, who had the transaction with Farry, testified that he did not know anything about the bulletin and had received no information that the bonds were stolen. Obviously he would not have taken the bonds as collateral if he had been advised that they had been stolen. It is clear that defendant, through its cashier, acted in good faith in accepting the bonds as collateral. This is all the law requires. *Bradwell v. Pryor,* 221 Ill. 602; *Chicago Auto Sales v. Peters,* 221 Ill. App. 363; *Chicago Bank of Commerce v. Kraft,* 269 Ill. App. 295; secs. 52 and 56, ch. 98, Cahill's 1933 Statutes, ¶¶ 72, 76.

(3) Was the defendant a holder of the bonds in due course, it having received actual notice that the bonds were stolen while it had the bonds in its possession and before it had paid out any of the proceeds of the loan? We think it was not. Sec. 54, ch. 98, Cahill's 1933 Statutes; *First State Bank & Trust Co. v. First Nat. Bank of Canton,* 314 Ill. 269.

Section 54 of our Negotiable Instruments Act, provides, "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

In the *First Nat. Bank* case, *supra,* it was held that where a bank has paid a portion of a forged check and opened an account with the payee for the balance, it is not, after notice that the check was forged, a holder in due course as to the amount of the deposit. In that

case a person opened an account by presenting a check for more than $800. The excess amount of the check over $500 was paid to the payee and he was credited with $500 as a depositor. It turned out that the name of the drawee was forged. The bank on which the check was drawn paid the check through mistake, through the local clearing house to the bank of deposit. It afterward brought suit against the bank in which the deposit was made and recovered $500. In that case the court said (p. 272) : "Where the holder of a forged check has not suffered or may avoid loss, he ought not to be permitted to profit by payment to him by the drawee." The court then quotes section 54 of the Negotiable Instruments Act; and continuing said (p. 273) : "A bank is not a holder in due course of a negotiable instrument if it has given nothing of value therefor beyond a credit to the former holder as a depositor, and has not honored his checks upon or in any way bound itself to account to someone for the deposit. (*Warman v. First Nat. Bank,* 185 Ill. 60.)" And the judgment for $500 in plaintiff's favor was upheld.

In the instant case defendant's cashier testified that on June 23, 1930, George L. Farry, who was president and owned practically all of the stock of the Fidelity Motors Company, applied to defendant bank for a loan, which was refused on account of the collateral offered; that on June 30th Farry again applied but was told he must furnish collateral. Farry thereupon went to the safety deposit vaults in the basement of defendant's bank building, obtained the four Bethlehem Steel bonds and made his personal note for $4,000, for the reason, as the cashier testified, that the bonds belonged to Farry and not to the Fidelity Motors Company. The bonds were put up as collateral, the cashier's check drawn to Farry's order, who immediately endorsed it in its own name and in the name

of the Fidelity Motors Company, and the proceeds of the loan, $3,980, were deposited in the defendant bank to the credit of the Fidelity Motors Company. Farry and the Fidelity Motors Company were, for all practical purposes, one and the same. Moreover, when defendant learned that the bonds had been stolen, it still had the bonds and the $3,980 on deposit, and it then charged the account of the Motors Company with the amount of the deposit and credited Farry. This was a mere bookkeeping entry. After this occurred, the Fidelity Motors Company was embarrassed because checks it had drawn on defendant bank were not honored. Afterward, on July 12th, defendant's cashier wrote a letter to the Commercial Credit Trust Co., which had apparently been given a check for more than $2,900 by the Fidelity Motors Company, and which defendant bank refused to pay, explaining that it had taken the matter up with Farry's attorney and would reinstate the Motors Company's credit because Farry had been a satisfactory customer of defendant and had agreed to co-operate with defendant in taking up the matter with defendant's Surety company. Whatever was defendant's reason in subsequently paying out the $3,980, it would have no effect because it could have protected itself; not having done so, it is not a bona fide holder in due course, under the authorities above cited.

The judgment of the circuit court of Cook county will be reversed with a finding of fact and judgment entered in this court in favor of plaintiff and against defendant for $4,200 with interest thereon at 5 per cent from October 29, 1930, the date plaintiff made written demand on defendant for the return of the bonds.

*Judgment reversed with a finding of fact and judgment entered in this court.*

MATCHETT, P. J., and McSURELY, J., concur.

Finding of fact: We find as a fact that defendant, having in its possession the proceeds of the loan of $3,980, and the four bonds at the time it was notified that the bonds were stolen, is not a holder in due course of the bonds.