**Uptown State Bank, Appellee, v. United States Fidelity and Guaranty Company, Appellant.**

**Gen. No. 38,866.**

Opinion filed March 24, 1937. Rehearing denied April 12, 1937.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellant; EUGENE P. KEALY, of Chicago, of counsel.

ERNEST A. EKLUND, of Chicago, for appellee; FREDERICK J. BERTRAM and JOHN N. THORNBURN, all of Chicago, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

The defendant appeals from a judgment against it for the sum of $5,136.25 in favor of the plaintiff, based upon a suit by the plaintiff against the defendant upon an insurance policy, designated as a securities blanket bond, to recover a loss sustained by the plaintiff and alleged to be within the conditions and provisions of the policy. The case was heard by the court without a jury and resulted in a finding and judgment against the defendant.

At the trial the defendant offered no evidence other than to introduce two letters, which appear in the record.

Plaintiff alleges that it is a banking corporation organized under the laws of the State of Illinois, and that the defendant is a fidelity and guaranty corporation doing business under the laws of this State; that on June 15, 1930, in consideration of a premium, the defendant issued and delivered its securities blanket bond, so-called, in writing to the plaintiff in the sum of $10,000.

Defendant's answer to this complaint denies each and all of the allegations, except to admit the execution and delivery of the policy, and avers that in a certain action wherein the National Bank of the Republic was the plaintiff and the Uptown State Bank was defendant, the Appellate Court on the 5th day of February, A. D. 1934, affirmed the judgment of the trial court for the plaintiff and held that the Uptown State Bank, plaintiff in this action, was not a holder in due course of the Bethlehem Steel Company bonds, which are the subject of the suit here upon the policy.

The bond in question was offered in evidence by the plaintiff, which is in part as follows:

"In consideration of an agreed premium, the United States Fidelity and Guaranty Company, a corporation

of the State of Maryland, with its home office in the City of Baltimore (hereinafter referred to as Company), hereby undertakes and agrees to indemnify and hold harmless Uptown State Bank of Chicago, Illinois (hereinafter referred to as Insured), in the amount or amounts specified in sub-section 2 of Section A, from and against direct losses sustained by the insured by reason of having, during the term hereof, in the ordinary course of business, in good faith, without notice or knowledge, and at or through any of the offices covered hereunder:

"A. Purchased for value for the insured's own account or as broker or agent for the account of another, or in any fiduciary capacity, or taken as or applied as collateral and as a condition precedent to any liability assumed by the insured or to any loan made or credit extended by the insured for the insured's own account or for the account of another, or in any fiduciary capacity, or to any renewal thereof, or taken or applied in substitution for any such collateral, any securities specifically insured in sub-section 2 of Section A;

"(a) Which shall have been forged, counterfeited, raised or otherwise altered, or lost or stolen;

"(b) Which shall have been purchased or taken or applied as aforesaid, under forged, raised or otherwise altered, or lost or stolen, transfers, assignments, bill of sale, power of attorney, guarantees, endorsements or other instruments, certificates or documents required by the insured as a pre-requisite to such purchasing, taking or applying."

The facts having a material bearing upon the liability of the defendant are, that the plaintiff on June 30, 1930, during the term of the securities bond issued by the defendant, received certain Bethlehem Steel bonds of the face value of $5,000, as collateral upon the note of George L. Farry, a customer of more than ten years

standing; that the money loaned upon the note was paid to George L. Farry, by the bank by delivering to him a cashier's check, which was subsequently indorsed by Mr. Farry and deposited in the account of Fidelity Motors Company, of which Farry was a stockholder, and which was a corporate entity separate and distinct from that of George L. Farry; that the bonds were taken by an officer of the bank in good faith and without any notice or knowledge on the part of the bank that such bonds were, in fact, stolen bonds.

There is evidence in the record that the bank had no knowledge that the bonds had been stolen until July 2, 1930, three days after the money had been paid to the borrower, George L. Farry, and he, in turn, had indorsed the bank's check, which was deposited in the corporation's account in this bank. Upon learning that the bonds were purported to have been stolen, the plaintiff in this action gave immediate notice of this fact to the defendant.

There is evidence by the witness Edward M. Warner, the president of the bank, that he telephoned Mr. Broderick, the superintendent of claims of the defendant company, immediately after receiving notice of the fact that the bonds were stolen, and told him that the bank was depending upon his company for guidance in the matter. The defendant thereupon sent two men to the bank from its office, one of whom was Mr. Broderick, and all information and records in the possession of the bank were put at the disposal of the defendant's representatives. They were given information that the money was paid by cashier's check to George L. Farry, who, having no account at the bank, deposited it in the corporation account of the Fidelity Motors Company.

There is also evidence that Mr. Warner stated to the defendant's representatives that the bank was at a loss

to know whether it had a right to take the entire fund from the corporation account, and that he was depending upon the guidance of the United States Fidelity and Guaranty Company inasmuch as he did not feel at the time that the bank should hire or should go to the expense of hiring an additional lawyer when the defendant was insuring the bank against losses of this kind. Mr. Broderick advised Mr. Warner at the time that the bank had no right to take the funds out of the corporation's account, and Mr. Broderick informed Mr. Warner that he would write him or cause to be written to him directions as to what the bank was to write to Mr. Farry, demanding payment of his loan.

Subsequently, on July 19, 1930, the bank received a letter from the United States Fidelity and Guaranty Company, inclosing a draft of a letter to be written on the bank's stationery to Mr. George L. Farry, and requesting to be advised as to the reply received to the communication. The letter inclosed, which the defendant requested the bank to write to Mr. Farry, directed Farry's attention to the note and securities given, and advised him that the bank had learned that the bonds were stolen, and that, therefore, in accordance with the provisions of the note, the bank declared the whole note payable immediately and demanded payment. Under the date of July 23, 1930, the plaintiff sent the suggested letter to Mr. Farry, and reported to the defendant that it had written and sent the letter as requested by the defendant. Following the defendant's instructions, Mr. Warner, president of the plaintiff bank, on July 25, 1930, wrote to the defendant inclosing a letter from Bernard W. Vinissky, an attorney, received in answer to the bank's demand letter to Farry. Also inclosed to the defendant was a copy of the bank's reply to Vinissky, suggesting that he take the matter up with Mr. Broderick at the United States Fidelity and Guaranty Company.

On June 23, 1931, the Uptown State Bank received a letter from the attorneys for the National Bank of the Republic, owner of the stolen bonds, demanding the surrender of the bonds or the payment of the value thereof. Pursuant to telephone instructions from the defendant insurance company, plaintiff forwarded this letter to the defendant for reply and the following letter was written by the defendant to the attorneys for the National Bank of the Republic.

"July 2nd, 1931.

"Your letter of June 23rd, 1931, addressed to the Uptown State Bank in reference to certain bonds of the Bethlehem Steel Company, has been referred to us for attention. We are advised that the bonds in question were called for payment several months ago and have been duly presented and paid.

"The Uptown State Bank acquired these bonds in the usual course of business, for value and without any notice or knowledge of any alleged defect in the title thereof, and under the law, the bank is the legal holder in due course of said bonds.

"Under the circumstances, the bank does not recognize the alleged claim of your client to the bonds in question.

Very truly yours,
Counsel."

Following this letter of refusal written by the United States Fidelity & Guaranty Company, the National Bank of the Republic brought suit against the Uptown State Bank for the value of the bonds. In the defense of this case the attorneys for the United States Fidelity and Guaranty Company appeared for the Uptown State Bank. When judgment was rendered in this case against the Uptown State Bank, and appealed, counsel for the insurance company appeared in this case on behalf of the Uptown State Bank.

Thereafter, when the judgment in favor of the National Bank of the Republic against the Uptown State Bank was affirmed by the Appellate Court of Illinois, 273 Ill. App. 401, and petition for leave to appeal to the Supreme Court was denied, the insurance company refused to pay the judgment, and thereupon the plaintiff paid the sum of $5,136 in satisfaction of the judgment and costs rendered in favor of the National Bank of the Republic in said proceedings and demanded that the defendant reimburse plaintiff for its loss. This was refused and the plaintiff thereupon instituted the present litigation, to recover its loss upon the bond.

The defendant admits that its liability is based upon the provisions of the bond; that it agreed to indemnify the plaintiff "from and against direct losses sustained by the insured by reason of having . . . in the ordinary course of business, in good faith, without notice or knowledge, taken as or applied as collateral . . . to any loan made by the insured . . . any securities which shall have been lost or stolen," and contends that ch. 98, ¶ 72, sec. 52 of the Negotiable Instruments Law (Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 89.072) is controlling upon the question that a holder in due course is defined to be a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue and without notice that it had been previously dishonored if such is the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Therefore, in applying these words, the defendant's argument is that the statute requires that the insured

must acquire the securities as a holder in due course before the insured is entitled to make any claim for any direct loss resulting from the acquirement of such securities; that taking a negotiable security "in the ordinary course of business, in good faith, without notice or knowledge" in the ordinary sense in which those terms are used and applied, means taking a negotiable instrument as a holder in due course.

Plaintiff's reply to this contention is that the issue in the case at bar is whether or not in the language of the indemnity bond the Uptown State Bank has taken as collateral upon any loan made by it the bonds (1) "during the term of the insurance policy," (2) "in the ordinary course of business," (3) "in good faith," (4) "without notice or knowledge," and (5) "at or through any of the offices covered" thereunder.

The loss in this case occurred during the term of the insurance and the plaintiff received the stolen bonds in the ordinary course of business. It received the bonds in good faith, and the only question remaining, and which is in dispute, is whether the bank, after it had knowledge that the bonds were stolen, did commit any negligent act by its agent which resulted in the loss sustained by the plaintiff.

The fact is that the defendant had knowledge, which it received from the plaintiff, that the bonds in question were stolen and the plaintiff wanted advice regarding the disposition of the funds on deposit with the plaintiff in the account of the Fidelity Motors Company, which were received from George L. Farry. The defendant conferred with the plaintiff and prepared letters for the plaintiff's signature, which were mailed to the parties in interest.

The evidence does show that the defendant's agent, Mr. Broderick, advised with the officers of the plaintiff bank in regard to charging the Fidelity Motors

Company account with the amount on deposit in this account, which had been loaned to Farry by the bank. The charge was made by the bank against the account of the Fidelity Motors Company, but was finally released.

The defendant points to the evidence of the cashier, Ernest Dose, that Mr. Broderick never advised these officers of the bank just what the plaintiff should do under the circumstances. However, upon an examination of the abstract it appears that in a conversation between these men, Mr. Broderick said "he thought we had good title to the bonds, that we had accepted them without any knowledge to obstruct title, and they were bearer bonds. Mr. Broderick confirmed my (Dose's) belief that it was his (Farry's) company's money and we had no right to touch it to apply on Mr. Farry's personal obligation."

Evidence was offered by the plaintiff's witness, Edward M. Warner, its president, and Ernest Dose, cashier, and was passed upon by the court, together with the admission of the defendant that on the day the bank received the bonds it did not know that they were stolen, and the facts in the record support the judgment entered in the cause for the plaintiff.

The theory of the defendant is that the plaintiff having knowledge of a defect in the title of the bonds, it sustained a loss by its negligent act in paying out the money on deposit in the Fidelity Motors Company account and must bear such loss. However, the fact that the letter was prepared by the defendant and mailed by the plaintiff to Mr. Farry at defendant's request, and also the evidence of the witnesses support the conclusion of the trial court of defendant's liability. The appearance by the defendant's agent in handling the controversy, not alone between the parties, but also in court, would indicate that the plaintiff was interested

in being protected by the bond of the defendant, a contract issued by the defendant and accepted by the plaintiff, and also in being assured that it was doing the proper thing in making payment of the amounts drawn upon the Fidelity Motor Company account.

The defendant relies in a large measure upon the opinion of the Appellate Court in the case of the *National Bank of the Republic v. Uptown State Bank*, 273 Ill. App. 401, which held that the defendant in that case was not a bona fide holder in due course under the authorities cited in the opinion.

The rules of law applied by this court in that case are controlling, but do not apply in the instant case for the reasons stated in this opinion.

The facts detailed in this opinion as occurring between the plaintiff and the defendant after it had knowledge that the Bethlehem bonds were stolen, do not indicate that the plaintiff was guilty by its agent of such a negligent act as to bring about the loss sustained by the plaintiff, and for which it now seeks to recover under the terms of the bond. The transactions between the plaintiff and the defendant were not material, and had no place in the record in the action between the National Bank of the Republic and the Uptown State Bank.

Other questions are called to our attention in this case, but in view of the fact that we have decided the question of liability of the defendant to the plaintiff, it will not be necessary to consider them.

The judgment entered by the trial court is therefore affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.